STATE OF IOWA, Appellee, v. CORVAN VANDEWATER, Appellant.

CRIMINAL LAW: New Trial—Grounds—Lack of Specification. Motions for new trial must be specific, in criminal, as well as in civil, cases, as to the grounds, or they will not be reviewable.

CRIMINAL LAW: Trial—Nonspecific Objections. Objections to testimony in criminal cases must be as specific as is required in civil cases, in order to receive review on appeal.

CRIMINAL LAW: New Trial—Grounds—Unskillfulness of Counsel. Neglect and incompetency of counsel for an accused in the trial of a criminal case are not ordinarily grounds for a new trial. (See Book of Anno., Vol. 1, Sec. 13944, Anno. 109 *et seq.*)

LARCENY: Evidence—Recent Possession—Effect. The recent possession of stolen property may be such as to justify a verdict of guilty. (See Book of Anno., Vol. 1, Sec. 13005, Anno. 102 *et seq.*)

CRIMINAL LAW: Evidence—Attitude, Actions, and Conduct of Accused. The attitude of an accused and what he said and did while under investigation relative to the charge against him may be admissible. (See Book of Anno., Vol. 1, Sec. 13897, Anno. 18 *et seq.*)

LARCENY: Asportation—Separate Offenses. A single larceny may be committed by more than one act of asportation.

Headnote 1:  17 C. J. p. 87.  Headnote 2:  17 C. J. p. 58.  Headnote 3:
16 C. J. p. 1145.  Headnote 4:  36 C. J. p. 873.  Headnote 5:  16 C. J.
p. 549.  Headnote 6:  36 C. J. pp. 771 (Anno.), 799.

Headnote 1:  20 R. C. L. 206.  Headnote 3:  24 A. L. R. 1027; 20 R.
C. L. 287.  Headnote 4:  17 R. C. L. 73.  Headnote 5:  8 R. C. L. 494.

*Appeal from Adair District Court.*—W. G. VANDER PLOEG,
Judge.

FEBRUARY 15, 1927.

The defendant was indicted, tried, and convicted for the
crime of larceny.  Judgment was entered on the verdict, in con-
formity to law.  Defendant appeals.—*Affirmed.*

*Wilson & Kellam,* for appellant.

*John Fletcher,* Attorney-general, and *Neill Garrett,* Assist-
ant Attorney-general, for appellee.

DE GRAFF, J.—On September 10, 1926, the defendant was
indicted by the grand jury of Adair County, Iowa, for the crime
of larceny, in that, on or about the 3d day of March, 1926, he
did willfully, unlawfully, and feloniously steal, take, and carry
away 4 spools of barbed wire and 50 steel posts, the personal
property of the Royal Union Life Insurance Company of Des
Moines, Iowa, said property being of the aggregate value of $45.
On September 23, 1926, the jury returned a verdict of guilty,
as charged, and determined the value of the stolen property at
$35.

On September 24, 1926, a motion for a new trial was over-
ruled, and judgment entered.  This motion assigned the follow-
ing reasons, to wit: 1.  The verdict is contrary to the evidence,
and the weight of evidence.  2.  The verdict is
contrary to law.  3.  The verdict is a result of
passion and prejudice.  4.  The court erred in
admitting certain testimony, as shown by the record, over the
objections of the defendants.  5.  The court erred in giving
instructions on its own motion, and each of the instructions and
all of the instructions, as not containing a true statement of the
law.

1. CRIMINAL LAW:
new trial:
grounds: lack
of specification.

At the outset, it is pertinent to inquire into the meaning and sufficiency of these assignments, for the purposes of this appeal. Clearly, they are not specific, but quite general in character (*Anthony v. O'Brien*, 188 Iowa 802) ; and, as bearing on the admission of evidence, or on the instructions given, they may not be viewed as proper exceptions, within the rule of statute or the interpretations of the statutory rule of this court. See Section 11495, Code of 1924. The trial court was not advised of the specific errors claimed, by anything contained in the motion for new trial, unless it is the sufficiency of the evidence to sustain the verdict, which we will note presently. The trial judge should not be foreclosed in this manner. He was not afforded an opportunity to rule or correct the error which is now argued in this court. The record of the trial is lacking in proper exceptions to evidence and instructions, and the instant motion for new trial did not serve the function of an exception.

The defendant in a criminal case waives error on appeal in every instance where a proper exception is not taken below. *State v. Schwab*, 112 Iowa 666. Counsel in a criminal case is under obligation to make his objections as specific and definite as is required in a civil case, in order to present a question of law for consideration upon appeal. *State v. Barr*, 123 Iowa 139.

2. CRIMINAL LAW: trial: nonspecific objections.

It is urged in argument by appellant that his present counsel were not his counsel upon the trial of this case below, and it is strenuously urged that a rank injustice has been done the defendant by reason of the fact that "both ordinary and average skill were lacking in the handling of the defense."

3. CRIMINAL LAW: new trial: grounds: unskillfulness of counsel.

It may be that defendant's counsel in the first instance were not sufficiently diligent in entering objections to certain evidence offered by the State, and it is quite apparent that no proper objections were made to the instructions given by the trial court at any stage of the proceeding. This, however, does not *per se* constitute the absence of a fair and impartial trial. The very question was passed upon in *State v. Higgins*, 192 Iowa 201. It is therein said:

"We cannot say that, because counsel then representing the appellant did not see fit to preserve exceptions to the instructions, or to request instructions in behalf of appellant, we can

ignore the plain provisions of the statute in regard to said matters, and hold that, because of failure in this regard, the appellant has been denied a fair trial. To so declare would not only pay a premium on laxity in the trial of cases, but would amount to a complete abrogation of statutory requirements."

None of the now claimed defects in any of the instructions were pointed out in the motion for new trial. No other exceptions were taken. In *State v. Williams*, 115 Iowa 97, it is said:

"The policy of the law is to give every person accused of crime a fair trial, but it is not intended to give him power to take an unfair advantage of the court."

If we turn for a moment to the case on its merits, it is observed that the defendant was charged with the larceny of fencing material which was the property of the Royal Union Life Insurance Company of Des Moines. The farm on which the fencing material was located had been leased by the insurance company to one Charles Mitchell, a very short time prior to the alleged larceny. It cannot be questioned that certain fencing material was then on the farm. The material had been inspected by the tenant, especially the posts, as he had never seen any posts painted like these. It further appears that at least two trips were made by the person committing the larceny, as, shortly after the asportation of the posts, the tenant had placed marks of identification upon the spools of wire.

On the afternoon of March 3, 1926, Mitchell and his wife met and passed the defendant, who was driving a team of horses and wagon near the place in question. When he was first seen, he was walking by the side of the team; and before Mitchell passed him, the defendant got on the wagon. Later in the afternoon, Mitchell drove to the farm he had just leased, and it was at that time that he discovered that the steel posts had been taken. He observed the tracks, and that the posts had been carried to the gate and loaded. He identified the tracks as those made by the horses and wagon of the defendant, and at that time he also examined the foot tracks, and compared them with other tracks that he saw on the road, which tracks were evidently made by the defendant at the time he was walking beside his team. The measurements of the foot tracks in the two places were the same. The next morning, Mitchell and his son went to the farm and drove nails and staples in the

wire spool heads. A short time thereafter, Mitchell discovered that the spools of wire were gone. Later, Mitchell found the posts in the possession of a farmer, named Mr. Erbes, who lived about a quarter of a mile from a store operated by the defendant. Erbes testified on the trial that there were four spools of wire in the possession of the defendant at the time he had his conversation with him concerning the purchase of the fencing material, and that at that time he bought from the defendant for $5.00 two spools of wire, and a little later, 50 steel posts. The defendant delivered the posts, for which Erbes paid $13.50. These steel posts had green tops and black bottoms, and were identified as the same, in color, size, and workmanship, as those subject to the larceny. The spools of wire had the identification marks on at that time, but upon the trial it was shown that somebody had removed the marks.

Another farmer, by the name of Brown, who lived about a quarter of a mile south of the defendant, purchased two spools of barbed wire from the defendant in early March, and Brown noticed at that time that the defendant had four such spools in his possession. He paid the defendant $5.00 for the two spools. Brown also testified that, when Mitchell and Mr. Wachter, who was the loan agent of the Royal Union, visited his place, after the purchase of the wire, Mitchell pointed out marks of identification which he had placed on the spools. Brown himself also had placed marks of identification on the spools.

The four spools and two of the posts were placed in the county jail for safe-keeping. It so happened that, when the defendant was arrested, he was placed for a short time in the cell which contained the property in question; and it was a fair inference for the jury to draw, under the evidence, that the whittling off and the obliteration of the notches which had been placed on the ends of the spools, and removal of the staples and nails which had been placed by Mitchell for identification purposes, had been done by the defendant during his brief confinement in the cell with this property. The matter of identification, at any rate, was a question for the jury, and it was for the jury to weigh the evidential fact of the defendant's possession of the property recently stolen. His possession was not explained to the jury, as no evidence was offered on behalf of

the defendant. When the State rested its case, the instructions were read by the court.

The recent possession by the defendant of the personal property taken from the farm in question was an evidential fact, and, unless the evidence in relation to that possession cre-

4. LARCENY: evidence: recent possession: effect.

ates a reasonable doubt of the defendant's guilt, the jury was justified in returning a verdict of guilty. The legal principle involved is plainly and tersely stated in *State v. Perry,* 165 Iowa 215, and *State v. Fortune,* 196 Iowa 995.

Upon a careful consideration of the evidence in this case, we are fully persuaded that the verdict returned is supported by the evidence. There is nothing to sustain the claim of ap-

5. CRIMINAL LAW: evidence: attitude, actions, and conduct of accused.

pellant that the verdict is the result of passion and prejudice. It is shown that, at the time that Wachter, the agent of the insurance company, interrogated the defendant with respect to the posts and wire, after the discovery of the sales by the defendant, the defendant procured a Winchester shotgun, threatened to shoot Wachter, and ordered him to get back to Des Moines as quickly as he could, and not to return. The defendant also used very abusive and profane language at this time. The attitude of the defendant and what he said and did at the time of the investigation of this matter were proper for the jury to consider.

It is also the claim of the appellant that, under the record,

6. LARCENY: asportation: separate offenses.

two distinct and separate larcenies were committed, for the reason that the evidence shows two asportations of the property subject to the alleged larceny.

In the first place, there were no proper objections made in this particular during the trial of the cause; but, had there been, we see no merit in the proposition. We have held that the stealing of several articles at the same time and in the same act from the same person constitutes but one transaction, and is one act of larceny. *State v. Broderick,* 191 Iowa 717. In order to constitute a single transaction or a single larceny, it is not necessary that all the property should have been taken and carried away at the same time, but it is necessary to prove that, at the time the defendant took away certain items of property, he in-

tended to take all of the property alleged to have been stolen. He may have failed to do so, by reason of the nature or quantity of the items in question or the absence of means at hand to remove the property at one time by the same act. This is a question for the jury to determine, under a proper instruction by the court. It is only when different items of property alleged to have been stolen were, in fact, taken by the defendant in separate and distinct transactions, that separate criminal acts are committed. This is not the instant case.

The judgment entered on the verdict is—*Affirmed.*

EVANS, C. J., and ALBERT and MORLING, JJ., concur.