STATE, RESPONDENT, v. KURTH, APPELLANT.

(No. 7,646.)

(Submitted September 24, 1937. Decided October 13, 1937.)

[72 Pac. (2d) 687.]

*Mr. H. R. Eickemeyer,* for Appellant, submitted a brief, and argued the cause orally.

*Mr. Harrison J. Freebourn,* Attorney General, and *Mr. Mark H. Derr,* Assistant Attorney General, for the State, submitted a brief; *Mr. Derr* argued the cause orally.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

This is an appeal by defendant from a judgment of conviction of the crime of embezzlement under section 11318, Revised Codes, and from an order denying his motion for a new trial.

The information charges that the city of Great Falls owns and operates its own water plant; that by ordinance it created the

board of water commissioners and the office of water registrar; that defendant was the duly appointed water registrar between the 4th day of May, 1931, and the 26th day of June, 1933, and as such chargeable with the duty, prescribed by ordinance, of collecting water rentals from the consumers of water in Great Falls and accounting for the same daily to the city treasurer, and that he did on the 6th day of May, 1931, and on divers dates and days from thence continuously to the 11th day of June, 1933, receive public funds belonging to the city in the amount and value of $9,251.40, and that he did "wilfully, knowingly, unlawfully, fraudulently and feloniously, omit, refuse, neglect and fail to pay over the aforesaid mentioned sums of public money belonging to the said city of Great Falls, Montana, unto the said city treasurer of the city of Great Falls, Montana, or at all."

The first point urged by defendant on the appeal is that the ▆ information charged more than one offense and hence was duplicitous, and that the demurrer thereto raising this question should have been sustained.

The courts are practically in accord in holding that an information charging embezzlement similar to that here is not duplicitous, where the embezzlement is accomplished by a continuous series of acts. (*State* v. *Peters,* 43 Idaho, 564, 253 Pac. 842; *State* v. *Dawe,* 31 Idaho, 796, 177 Pac. 393; *Casselman* v. *State,* 58 Okl. Cr. 371, 54 Pac. (2d) 678; *Moore* v. *State,* 58 Okl. Cr. 122, 50 Pac. (2d) 746; *Camp* v. *State,* 31 Ga. App. 737, 122 S. E. 249; *State* v. *Wetzel,* 75 W. Va. 7, 83 S. E. 68, Ann. Cas. 1918A, 1074; *Norman* v. *State,* 44 Ga. App. 92, 160 S. E. 522; *Craig* v. *State,* 95 Fla. 374, 116 So. 272; *State* v. *Noland,* 111 Mo. 473, 19 S. W. 715; *Young* v. *State,* 44 Ohio App. 1, 184 N. E. 24; *People* v. *Fleming,* 220 Cal. 601, 32 Pac. (2d) 593; *Roland* v. *Commonwealth,* 134 Ky. 170, 119 S. W. 760; *State* v. *Dix,* 33 Wash. 405, 74 Pac. 570; *State* v. *Leonard,* 56 Wash. 83, 105 Pac. 163, 21 Ann. Cas. 69.)

Defendant contends that these and similar cases are inapplicable here because of the provisions of the city ordinance making it his duty to account for the funds collected by him daily.

The state statute, however, and not the ordinance must be resorted to to ascertain whether a crime was committed. The ordinance was properly pleaded to show that defendant was chargeable with the receipt, safe-keeping, and transfer of public funds within the meaning of section 11318, supra. Failure to comply with the city ordinance requiring daily reports might have been explained consistent with defendant's innocence of the crime of daily embezzlements. In other words, the mere fact that there was not a daily accounting for the funds as prescribed by the ordinance would not necessarily establish the criminal intent necessary to constitute embezzlement. The state had the right to treat the series of acts as constituting one embezzlement culminating in the failure to account for the funds at the end of the term of the officer, and thereby obviate the difficulty of proving the requisite intent to constitute any of the intermediate acts a crime. The demurrer was properly overruled.

The defendant contends that the court erred in admitting evidence going beyond the scope of the information as limited by a bill of particulars furnished by the state pursuant to court order. In effect his view is that the bill of particulars, instead of advising him of the facts which he would be required to meet, was used as an instrument of deception. Careful consideration of the entire record, consisting of 940 typewritten pages, convinces us that his contention cannot be sustained.

The demand for a bill of particulars sought to require the state to apprise defendant specifically, amongst other things, of the names of the persons from whom water rentals were received by defendant between the dates named in the information, the amounts thereof and the dates when received, and what items of money he failed to pay over to the city, from whom and the time they were received and the amounts. The order for the bill directed that it give the following:

"First: The monies belonging to the city of Great Falls, Montana, which the defendant, Lloyd Kurth, received and had for safe-keeping and for transfer, between the 6th day of May, 1931, and the 11th day of June, 1933, which it is alleged he, the said

Lloyd Kurth, neglected and failed to pay over or transfer unto the city treasurer of the city of Great Falls.

"Second: The time when the said Lloyd Kurth received such monies, giving dates, amounts and names of persons from whom said defendant received said monies for the city of Great Falls, Montana, as water registrar or acting water registrar.

"Third: The monies belonging to the city of Great Falls, Montana, that the said defendant, as water registrar or acting water registrar, received from water rentals or from materials furnished consumers 'on the 6th day of May, 1931, and on divers dates and days from thence continuously to the 11th day of June, 1933,' and which it is alleged the said defendant did omit, refuse, neglect and fail to pay over and transfer unto the city treasurer of the city of Great Falls, giving the names of the persons from whom said water rentals were received, and to whom said materials were furnished, the amounts so received, and the dates when each of said amounts were so received."

Pursuant to this order, the state furnished a bill of particulars consisting of 146 typewritten pages, stating:

"1. That the monies belonging to the city of Great Falls, Montana, which the said Lloyd Kurth received and had for safekeeping and transfer on and between the 6th day of May, 1931, and to the 11th day of June, 1933, which plaintiff claims the said defendant, Lloyd Kurth, neglected and failed to pay over and transfer unto the city treasurer of the city of Great Falls, is the sum of Ten Thousand, Two Hundred Sixty-three Dollars and 50/100 ($10,263.50).

"2. That pursuant to the second and third sub-division of said order, the plaintiff does hereby annex an itemized statement and made a part of said bill of particulars showing the dates and amounts and the names of the persons, firms and corporations from whom the defendant as water registrar or acting water registrar, received monies for water rentals and materials furnished consumers on and between the 6th day of May, 1931, and to the 11th day of June, 1933, and failed and neglected to pay over and deliver the same, or similar sum or sums of money equal to the various separate items set forth and de-

scribed in said annexed statement unto the city treasurer of Great Falls, Montana."

Then followed 214 separate items, each of the same character excepting as to names, dates, amount, and numbers. The first item is a fair illustration of them all. It reads:

"Tap No. 4658                                         Anaconda Copper Mining Co.
"Ledger reads:
"May 9, 1931   $520.20   Receipt No. 1434   $52.00   $468.20
"Receipt No. 1434 shows dated May 9, 1931, received of Pipinich, for:

| | | | |
|---|---|---|---|
| "Tap No. 648 | $1.80 | .20 | $ 1.60 |
| Tap No. 4677 | 1.80 | .20 | 1.60 |
| Irrigation | 6.00 | .60 | 5.40 |
| Tap No. 5047 | 3.60 | .40 | 3.20 |
| | | | $11.80 |

"Receipt No. 1434 amounting to $11.80 was charged on the Registrar's Cash Book and credit given to the city of Great Falls Water Fund, but this transaction does not pertain to payment of water charges for Tap No. 4658, Anaconda Copper Mining Co. amounting to $468.20. The payment of $468.20 was paid by check of Anaconda Copper Mining Co. Great Falls Reduction Dept., on First National Bank of Great Falls and Metals Bank & Trust Co., Butte, dated May 6, 1931, No. 2049, endorsed by Lloyd S. Kurth, Registrar. This item was paid and cleared and was verified through the Anaconda Copper Mining Co. The above item not charged at any time on the Water Registrar's Cash Book nor credit given to the city of Great Falls, amounting to $468.20."

The state introduced proof that the affairs of the water department of the city were conducted in the following manner: When a consumer paid his water bill an official receipt would be issued in triplicate. The original receipt would be delivered to the consumer; one copy was used from which to gain the necessary information for posting in the consumer's ledger after which it was destroyed. The third copy was retained in the office. The water registrar would deposit amounts to the credit of the city representing the amounts shown by official receipts, and deliver the duplicate deposit slip to the city treasurer, who would then write in the amount in a bank book held by the water registrar. At the end of each month the total deposit shown in

the bank book was added by the city treasurer and an official receipt issued by the treasurer to the water registrar for the amount of deposits made for that month.

There were between 5,000 and 6,000 consumers and each month there were issued about 2,500 receipts.

Defendant contends that he was taken by surprise because of testimony given by the witness A. M. Johnson, deputy state examiner. Over defendant's objection he was permitted to testify from a memorandum designated "Plaintiff's Proposed Exhibit No. 22," which memorandum he admitted contained matters not contained in the bill of particulars. The precise matter complained of is that the witness was permitted to state that between the dates named in the information according to the records in the office of the water registrar, he received, according to his books, a total of $397,627.54, and accounted for only $387,258.19, leaving a shortage of $10,306.85. He admitted that to ascertain these figures he had to resort to the ledger entries of some five or six thousand consumers, whereas the bill of particulars was confined to but 214 separate items.

The first paragraph of the bill of particulars advised defendant that the amount of money belonging to the city which he neglected and failed to pay over and transfer to the city treasurer was the sum of $10,263.05. The state had the right to prove the general shortage in the manner in which it did, and did not thereby enlarge the issues as limited by the bill of particulars. The additional items not contained in the bill of particulars, concerning which testimony was given, were the items that defendant properly accounted for. They went to make up the amount of money handled by defendant during the period of time in question, and as to the excess over and above the shortage defendant could not complain, if the items set out in the bill of particulars are the ones which actually gave rise to the shortage, a point we shall now consider.

The state submitted proof that, as to the 214 items contained in the bill of particulars, defendant issued no official receipt to the person or corporation paying the water rental, but did give credit therefor in the ledger account of the payor. Thus, in the

case of the first item above quoted which is typical of the others, the receipt issued was numbered 1434 and purported to show the receipt of $11.80 from Pipinich though the amount of $468.20 was paid by the Anaconda Copper Mining Company by check. The state's witnesses admitted that defendant accounted to the city for the item of $11.80, and also admitted that the check was cleared and eventually was deposited to the credit of the city, but stated that it was never charged on the water registrar's cash book. In effect, the state's contention is that defendant took from the cash drawer a sum of money equivalent to the check if he received the amount of cash indicated by the official receipts, plus the items contained in the bill of particulars, as to which no official receipts were issued to the persons or corporations actually paying their rental.

Defendant testified that he did not receive the amount of cash indicated by the official receipts, plus the items contained in the bill of particulars for which no official receipt was issued, and said that he adopted and followed the practice of issuing receipts to poor water users who were delinquent instead of issuing an official receipt to large users, and that he did not receive payment from the poor users to whom receipts were issued. He said he never notified the poor water users of the fact that their delinquent bills were shown to be paid by his records. He stated he was told to follow this practice by Mr. Delphi, chairman of the water committee. Mr. Delphi died prior to the trial of this action.

The state takes the position that it sufficiently advised defendant of what he would be obliged to meet by the statements in the bill of particulars, reading: "That pursuant to the second and third sub-division of said order, the plaintiff does hereby annex an itemized statement and made a part of said bill of particulars showing the dates and the amounts and the names of the persons, firms and corporations from whom the defendant as water registrar or acting water registrar, received monies for water rentals and materials furnished consumers on and between the 6th day of May, 1931, and to the 11th day of June, 1933, and failed and neglected to pay over and deliver the same,

or similar sum or sums of money equal to the various separate items set forth and described in said annexed statement unto the city treasurer of Great Falls, Montana.''

Defendant contends that since the state concedes that he accounted for the particular checks embraced in the 214 items, he was not obliged to go further, since the state was restricted to those items. The proof did not depart from the items contained in the bill of particulars. It was those items that furnished the foundation for the charge against defendant. Of necessity, the state could not allege or prove from whom the particular money embezzled was received. It advised the defendant that amounts similar to, or equal to, those contained in the bill of particulars were not accounted for, and defendant must have known when he received the bill of particulars that he would have to explain those items just as he did, and that if he desired corroboration from poor delinquent water users he would have to be prepared to furnish such corroborating proof at the trial. We fail to see how he could have been misled by the bill of particulars or wherein the proof extended beyond the bill of particulars.

The only other point relied upon by defendant is that the ▮▮▮▮ court erred in refusing to give certain instructions offered by him, designed to give him the benefit of a presumption that, when inferior evidence is offered, the higher would be adverse if produced. Foundation for these offered instructions, he contends, springs from the following facts:

Before the case came on for trial, defendant filed a motion to require the county attorney to indorse the names of 2,600 water users, whose names he did not know, on the information as witnesses. At the hearing of the motion it was shown that the county attorney had employed 19 men to contact 2,600 of the five or six thousand water users for the purpose of obtaining information from them as to payments made by them to the water registrar. The state took the position that it was seeking this information to be used in rebuttal, if necessary, depending upon the character of the defense relied upon. The court de-

nied the motion. None of these 2,600 water users were called as witnesses by anyone.

Defendant contends that he was entitled to an instruction advising the jury that, if these water users were called as witnesses, their testimony would have been adverse to the state. The offered instructions were properly refused. There was no evidence before the jury on which the jury might have applied the offered instructions. (*State* v. *Smith,* 57 Mont. 563, 190 Pac. 107.) Moreover, the 2,600 water users were as available to defendant as to the state, and there is nothing in the record to indicate that they might have been or were hostile toward him, and, if some of them were such as he classed as poor users, they probably would not have been hostile if he treated them as he said he did, and in such cases there is no presumption against either party for failure to call them as witnesses. (22 C. J. 119, 120.) Furthermore, there is nothing in the record to indicate that the testimony which the 2,600 water users might have given would have been stronger or more satisfactory than that given by the state's witnesses who were actually called. (Compare *State* v. *Sedlacek,* 74 Mont. 201, 239 Pac. 1002.)

We find no merit in the contentions of defendant, and accordingly the judgment and order appealed from are affirmed.

MR. CHIEF JUSTICE SANDS and ASSOCIATE JUSTICES STEWART, ANDERSON and MORRIS concur.

Rehearing denied November 4, 1937.