STATE, RESPONDENT, *v.* AKERS, APPELLANT.

(No. 7,717.)

(Submitted December 10, 1937.   Decided January 13, 1938.)

[76 Pac. (2d) 638.]

106

*Mr. John L. Slattery,* for Appellant, submitted a brief, and argued the cause orally.

*Mr. Harrison J. Freebourn,* Attorney General, *Mr. Carl N. Thompson,* Assistant Attorney General, and *Messrs. Marron & Foor,* for Respondent, submitted a brief; *Mr. Thompson* and *Mr. Hugh N. Marron* argued the cause orally.

MR. JUSTICE STEWART delivered the opinion of the court.

Defendant has appealed from a judgment of conviction of the crime of grand larceny, from an order denying his motion for a new trial, and from an order denying his motion to set aside the judgment for want of jurisdiction.

The crime was committed in Roosevelt county on January 23, 1935. The subject of the alleged larceny was a mare, the property of A. B. Summers. The evidence is substantially the same as that in the companion case of *State* v. *Akers,* No. 7,725, ante, p. 43, 74 Pac. (2d) 1138, except that it relates to a different animal belonging to a different owner. There was evidence that it was taken near the same time and under the same circumstances as the horse involved in case No. 7,725, and reached the same destination in Wisconsin.

As all but one of the contentions of the defendant have been considered and decided in the companion case No. 7,725, and as the evidence sustaining the conviction here is the same or as strong as in the other case, we shall consider only the plea of defendant that he has already been in jeopardy and has suffered a conviction in case No. 7,725 for the same offense.

As in the companion case, Steele was the important witness in this case. The information charged six defendants with larceny, viz.: Ernest Summers, Wallette, Hamilton, Sherrill, Steele, and Akers. Before trial the action was dismissed as to Summers, Wallette, Hamilton, and Sherrill. Steele was granted a separate trial, and the action proceeded against Akers alone.

The evidence shows that the two horses involved in this and in the other case ranged on the open range in the same vicinity but not together. They watered at the same place, but were never seen grazing together. They were both stolen on the same day and both were actually taken from the range by Steele.

On January 23, 1936, the parties gathered at the Buckles place and, according to the testimony of Steele, Akers went west from the Buckles house and he, Steele, went east. Both rounded up some horses and they were placed in the Buckles corral, and then all but seventeen were cut out. In explaining where the two horses were stolen, Steele said that the first horses he came to when he traveled east were about one mile east of the Buckles house. In that bunch, consisting of about ten head, was the gray gelding involved in case No. 7,725. He drove these toward the Buckles house about one-quarter of a mile. He then went after a bunch of about fifteen head further south, about one-half mile from the first bunch. These he drove toward the house about one-fourth of a mile, and then went south after another bunch of ten head which were about three-quarters of a mile from the Buckles house. The mare involved in this action was in this third bunch. They were all driven into the corral together.

The court submitted the question whether there was in fact more than one taking to the jury under instructions to the effect that, if the theft of the two animals were at different times and at different places, each would be a separate offense, whereas, if the theft of both were parts of one act of stealing, they would constitute but one crime. The court instructed the jury to make a special finding on the question of jeopardy and

former conviction. In accordance with this direction, and in addition to a general verdict of guilty, the jury brought in the following verdict: "We, the jury, duly impaneled and sworn to try the issues in the above entitled case, find for the State against the defendant John Akers, that he had not been formerly convicted of the same offense, and has not been once in jeopardy."

The instruction relative to jeopardy and former conviction and the special verdict took into consideration the general principle that, where two articles are taken, at different times and different places, there may be but one larcenous act if the asportation of the several articles were in fact one transaction. In determining the applicability of this rule to the facts in this case, we are directed to the case of *In re Jones*, 46 Mont. 122, 126 Pac. 929, 930, which involved the question whether the taking of several articles from a store on different days constituted a series of petit larcenies, or one crime of grand larceny. The matter was resolved in favor of the latter theory. The court based its decision upon the ground that the several takings amounted to one transaction. It said: "Each case must be determined upon its own special facts and circumstances. If, as it is said by some of the courts, the different asportations are prompted by one design, one purpose, one impulse, they are a single act, without regard to time." We seriously question the accuracy of the conclusion reached, even as applied to the facts then under consideration. We do not believe the reasoning of that case can be relied upon to sustain the position of the defendant in this case.

The facts and circumstances in the present case are almost identical with the facts in the case of *State* v. *English*, 14 Mont. 399, 36 Pac. 815. The decisive question was the same as is presented here, and the persuasive analogy is too striking to be overlooked. The syllabus in the *English Case* states the matter tersely and to the point, and is borne out by the facts of the case, viz.: "Where defendant and another stole a steer from the herd of one owner, and about an hour after stole a cow from the herd of another owner, driving both off together,

the stealing of each animal was a complete and independent offense, and an acquittal as to the theft of the steer is not a bar to a prosecution for the theft of the cow. Nor is the defense of an alibi, established upon the trial for larceny of the steer, *res judicata* that defendant was not present when the cow was stolen.''

The peculiar facts of the present case point the way for us here. Each of these horses was in a separate group; the gelding was in the first group, and the mare in the third group. The witness Steele testified that he took actual control of the first group, drove them a quarter of a mile, then left them and proceeded to get a second group started, and then finally the third group was rounded up. Each horse was in the constructive possession of its owner on different parts of the range. The two horses were not ranging together and were only brought together by the unlawful act of the defendant.

In addition to the single design, in order to apply the ''one transaction'' rule, the several subjects of the larceny must be so related in point of time and position as to make it physically possible for actual control to be exercised over both at the same time. In this case, as in the *English Case,* the fact that each of the two animals was in a different group and was on a different part of the range made it impossible for the actual control over the animals to be simultaneous.

To disregard the obvious facts of this case to the extent of holding that the taking here was merely one act or one transaction would lead to the absurd result that the defendant could have rounded up and assembled all of the range horses in Northeastern Montana into one corral, and thereafter sold them in one lot with the final result of having committed only one crime and without peril of more than one penalty. Such a result would not appeal to the ordinary sense of justice, and certainly would not tend to promote law enforcement or discourage stock rustling.

The judgment and orders appealed from are affirmed.

MR. CHIEF JUSTICE SANDS and MR. JUSTICE MORRIS concur.

110

Mr. Justice Angstman: I dissent. I think defendant's plea of once in jeopardy and former conviction should have been sustained as matter of law. I am aware that these pleas rise issues of fact (sec. 11928, Rev. Codes), and that the pleas cannot be determined against the defendant except by verdict of the jury. (*State* v. *O'Brien*, 19 Mont. 6, 47 Pac. 103.) But if the evidence is in such condition as to leave no doubt in the minds of reasonable men that the pleas are good, then the court may and should determine the question in favor of defendant without submitting the question to the jury (*State* v. *Nunnelly*, 43 Ark. 68), the same as it should any other material issue. I think such is the state of the record here, and that the majority of the members of this court are confused as to the law applicable to the facts, rather than in seeing in the facts any different situation from what I do.

Here, according to the State's evidence, the defendant and Steele agreed between themselves to steal horses. About a month before the actual theft they and Marsh met at Steele's place. Marsh indicated to them that he desired to buy some horses. A bunch was then rounded up and looked over. Among them was the mare involved in this action and the gelding involved in case No. 7,725. Marsh advised that he had bills of sale that corresponded with the brands of some of these horses and, according to the State's evidence, defendant thereafter ordered Steele to keep these horses in close range, as they might be ready to ship any time. Pursuant to this plan, Steele, on the day of the alleged offense, rounded up these horses as a part of this plan, and, after they were assembled into one compact bunch, they were driven into the corral where a division was made as to which ones would be cut out and which ones driven away in consummation of the plan to steal. It is true that the mare involved in this action was on that day actually grazing a short distance away from the gelding involved in case No. 7,725. It is likewise true that a different person owned each animal. However, the difference in ownership is immaterial.

In *State* v. *Mjelde,* 29 Mont. 490, 75 Pac. 87, 88, this court said: "The great weight of authority sustains the principle that, where several articles of property belonging either to one or several owners are taken at the same time and place, the act is a single transaction, and constitutes but one larceny. Although the information may charge the taking of a particular article or all the articles stolen, a trial for stealing a part is a bar to any subsequent action for the stealing of the remainder."

This is but an application of the rule stated by Bishop on Criminal Law, volume 1, fourth edition, sec. 891, wherein it is said, "that although when a man has done a criminal thing the prosecutor may carve as large an offense out of the transaction as he can, yet he must cut only once."

The supreme court of Vermont, I think, correctly states the rule in *State* v. *Emery,* 68 Vt. 109, 34 Atl. 432, 54 Am. St. Rep. 878, wherein it said: "It is an elementary rule in criminal law that the theft of several articles at one and the same time and place, and by one and the same act, constitutes but one indivisible crime, even though the articles belong to different owners, and that a judgment of conviction or acquittal of the theft of one of the articles is a bar to a prosecution for the theft of the others. A prosecution and conviction or acquittal for any part of a single crime bars any further prosecution based upon the whole or a part of the same crime.

"It is equally well settled that if, on the same expedition, there are several distinct larcenous takings, as taking the goods of one person at one place, and afterwards taking the goods of another person at another place, and so on, as many crimes are committed as there are several and distinct takings."

My associates place great reliance upon the case of *State* v. *English,* 14 Mont. 399, 36 Pac. 815. That case was essentially different from this. It does not appear in that case that the defendant and his confederate had planned the theft of the steer and cow as one theft or taking. The evidence indicates the contrary. In that case the theft of the steer was completed and, after the lapse of an hour, or at least a half hour, they went to a different herd, a mile or at least half a mile distant,

and stole the cow. In that case there were two separate transactions occurring at different times and places. There was an interruption of action between the first and second thefts. The evidence showing the theft of the steer would not prove the theft of the cow. Here there was but one plan, one purpose, one design, and one impulse. It was carried out by one continuous and uninterrupted act and at practically the same time and place. The case falls squarely within the reasoning of that of *In re Jones*, 46 Mont. 122, 126 Pac. 929, 930, wherein this court said: "If, as it is said by some of the courts, the different asportations are prompted by one design, one purpose, one impulse, they are a single act, without regard to time." The court, in reviewing the evidence, which it held was some evidence tending to show a single larceny, said: "The great number of articles which were admitted to have been stolen, the fact that they must have been taken, in some instances, at different times on the same day, and in others on different days, that the different thefts followed each other in rapid succession, and were continued for a period of about 150 days, that all the articles were stored in complainant's house for some purpose of her own, all being adapted for use by herself, it seems to us is some evidence tending to show that all the thefts were the result of a single purpose—a single impulse—and hence that there was a single larceny." I think this is a correct statement of the law, but whether it was correctly applied under the facts involved in the *Jones Case* is not here important. It certainly has application to the facts here.

In the case of *Cody* v. *State*, 31 Tex. Cr. Rep. 183, 20 S. W. 398, cited in the *Jones Case*, the court had this to say: "On the contrary, the rule generally is that property taken at one time and one place constitutes one transaction and one offense, and no aggregation of distinct and separate misdemeanors will make a felony. There is, however, an apparent exception to the rule, to which the trial court may have referred; that is, when several articles or things in bulk are taken by continuous acts, there being one purpose, one impulse, the act is one, without regard to time (1 Whart. Ev. 931); as where one drives

at night a wagon to the fence, and carries cotton from a pile in the field, 30 yards off, to his wagon, which he filled, and drove away. Though taken by successive baskets full, it was a theft of the wagon load, and, its value being over $20, was a felony. So, where one breaks into a store at night, and carries out by successive trips as much goods as he wished, the amount taken in the aggregate is the amount stolen. So, where one unlocks a money drawer of his employer, in which was $51, and had taken out $6 when detected, this court held that he had taken the whole amount in the drawer, because he had dominion over it, with power to take it into his possession.'' (Compare, also, *State* v. *Kurth,* 105 Mont. 260, 72 Pac. (2d) 687.)

Under the facts here, there was but one taking. The horses were not in different herds as in the *English Case,* but were on the open range and really constituted but one band, as they watered at the same place and, just prior to being rounded up, were not far apart. There was but one plan or purpose—one impulse—and that was to round up all the horses which Steele had been holding in close range, and then drive away and steal those the descriptions of which corresponded to those covered by bills of sale. It was accomplished by one continuous, uninterrupted act and was prompted by one purpose and intent. The evidence necessary to prove the theft of the one, and which was introduced in case No. 7,725, was identically the same as was presented in this case to prove the theft of the other, save that the evidence as to the identity of each animal was given in more detail in the particular case involving the particular animal.

If these two constitute separate offenses, then the State is privileged, under the facts here, to file thirteen different informations, and try defendant thirteen different times on exactly the same evidence in each case—that being the number of horses apparently stolen at the time in question. I say this because it is not possible for any two of the animals to occupy exactly the same grazing space at one and the same time. Essentially each was removed from the other at least some distance before and at the time of the taking. The defendant could

not exercise dominion over more than one at exactly the same instant of time.

I think it would be a gross injustice to the taxpayers to permit thirteen different informations to be filed and thirteen expensive trials conducted, each on the same identical evidence. The true test to be applied, in determining whether there is more than one offense, is whether the same evidence is admissible to prove each charge. (*Ex parte Nielsen,* 131 U. S. 176, 9 Sup. Ct. 672, 33 L. Ed. 118; *United States* v. *Nickerson,* 17 How. 204, 15 L. Ed. 219; *Gavieres* v. *United States,* 220 U. S. 338, 31 Sup. Ct. 421, 55 L. Ed. 489; *In re Snow,* 120 U. S. 274, 7 Sup. Ct. 556, 30 L. Ed. 658, 659; *Short* v. *United States,* 4 Cir., 91 Fed. (2d) 614; *State* v. *Marchindo,* 65 Mont. 431, 211 Pac. 1093; and see 12 Cornell Law Review, 214.)

Here, in order to connect Akers with the theft, it was necessary to show the plan formulated a month before the theft, and, since all the horses were taken by one continuous act, it was not possible to prove the theft of one without at the same time proving the theft of the others. Exactly the same evidence was necessary to prove each case. The situation is exactly the same as if a person stole a band of sheep at one and the same time and from the same place, except as they were necessarily scattered about as they were grazing. To prove the theft of one it would not only be proper, but absolutely necessary, to show the theft of the whole band. Such was the situation here. The prohibition against double jeopardy prevents the State from submitting the identical evidence to more than one jury to prove the same crime.

Neither can I see any justification for the assertion made by the majority that this result would in any way hamper the administration of justice, or for the claim that the view of the majority must be adopted in order to discourage stock rustling. The State was privileged to charge in one information the theft of the thirteen horses and thus present to the jury the true facts as to the magnitude of defendant's operations. It was shown here, however, that in case No. 7,725, wherein the charge was confined to the one gelding, the evidence showed the entire

transaction wherein the thirteen horses were driven away together with four belonging to Akers. I cannot see how the administration of justice requires us to ignore the provisions of the State Constitution (Art. III, sec. 18), prohibiting a person from being put in jeopardy twice for the same offense, or the provisions of the Federal Constitution to the same effect. (Amendment 5.)

The majority, I think, is also in error in supposing that the result, which I think is the correct one, would make it possible for defendant to round up all the range horses in Northeastern Montana without being guilty of more than one offense. Such operations would plainly contemplate a series of separate takings, each provable by a different set of facts. Such a plan is not comparable to the plan here, where it was known, in advance of the taking, just where the horses were that it was planned to steal and what ones were proposed to be stolen. Such an undertaking as the majority refers to would plainly constitute more than one offense. (*Patterson* v. *State,* 96 Ohio St. 90, 117 N. E. 169, L. R. A. 1918A, 583; *State* v. *English, supra.*)

I think the judgment should be reversed, with direction to dismiss the information.

MR. JUSTICE ANDERSON: I concur in the foregoing dissenting opinion.

Rehearing denied March 7, 1938.