683 P.2d 59

**STATE of New Mexico,
Plaintiff-Appellee,**

v.

**Ada Sheldon GRISCOM,
Defendant-Appellant.**

**No. 7539.**

Court of Appeals of New Mexico.

June 5, 1984.

Certiorari Denied June 20, 1984.

Janet Clow, Chief Public Defender, Katherine Pettit, Asst. Appellate Defender, Santa Fe, for defendant-appellant.

Paul G. Bardacke, Atty. Gen., Elizabeth Major, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

BIVINS, Judge.

Convicted of eight counts of fraud in violation of NMSA 1978, § 30–16–6 (Cum. Supp.1983), defendant appeals raising two issues: (1) whether the trial court erred in refusing her requested instruction on mistake of fact; and (2) whether the trial court erred in admitting hearsay evidence under the business records exception. We affirm.

The transactions which gave rise to these charges occurred over a three-month period, starting in November, 1982. Defendant arrived in Albuquerque at that time after "hocking" her jewelry. She had previously called her sister-in-law in Albuquerque from Texas asking for money so that she could come to New Mexico and enter a hospital.

After the sister-in-law returned from a trip during the Thanksgiving holidays, she learned that defendant had leased an expensive home with an option to purchase. She had also purchased a Cadillac and leased office space from the same people who sold her the house.

Defendant told her sister-in-law, the people who leased the house and office and sold her their car, and other creditors that she was the trust officer for the Saudi Arabia Bank of Belgium (SABB), which was owned by the royal family of Saudi Arabia, and that she had been directed to establish an office in the United States to place loans. Defendant claimed to work directly under Joseph Ayoub, a Lebanese, who during the course of the transactions in question was allegedly hiding, engaged in peace talks or under house arrest.

A flurry of activity followed defendant's representations. She purchased furniture, waterbeds, video equipment, a water filter system and other items for the house, and installed furniture, office equipment, a phone system and a telex with direct lines to Belgium and Saudi Arabia for the office. She also engaged an interior decorator to assist her.

For the goods and services acquired, defendant gave drafts on SABB or promises of payment in the future. The drafts were written on sight drafts or blank checks she purchased from an office supply store. A construction worker who at the time was selling meat door-to-door was engaged by defendant as SABB's on-site inspector for developments that would be financed by SABB. He was never paid.

In making her representations, defendant spoke of having a country estate in England, a flat in Paris, and numerous cars, including a Maserati. She described the SABB offices in Belgium in detail.

The State's theory was that all of these trappings were part of the web defendant was spinning to lure prospective borrowers to pay an advance fee for non-existent loans. It all came to an end when the drafts were returned unpaid and the creditors became suspicious. In February, with creditors in the outer office, defendant met with and obtained from some California businessmen a check for $150,000 representing an advance fee for a loan. She displayed the check to the creditors. The people who leased defendant their house and office space attempted to negotiate that check. It never cleared. Criminal charges followed.

**1. Mistake of fact instruction**

Defendant tendered the following instruction:

Evidence has been presented that Ada Griscom believed that SABB existed and she could draw upon funds in SABB. If

Ada Griscom acted (or omitted to act) under an honest and reasonable believe [sic] in the existence of those facts, you must find her not guilty....

NMSA 1978, UJI Crim. 41.15 (Repl.Pamp. 1982).

Defendant contends the refusal to give this instruction constituted reversible error because intent is an essential element of fraud and because evidence supports her theory that she acted on the honest belief that the SABB existed and that she was authorized to draw funds from an account at that bank.

In support of the instruction defendant relies on two lines of evidence. First, she refers to the fact that she consistently represented herself as a trust officer of SABB, and appeared concerned, as testified to by others, when the drafts failed to clear. She also cites the testimony of the interior decorator that defendant appeared excited when it seemed that a loan had been made to a California company and that she would be receiving funds to pay her bills. Defendant implies that these and other facts prove her story was consistent.

Second, defendant points to testimony by a Colorado lawyer that defendant helped set up a meeting between the lawyer and Joseph Ayoub in Brussels. This lawyer said he met Joseph Ayoub and saw papers which mentioned the name "SABB".

Intent is an essential element of fraud which may be established by inference from the evidence and surrounding circumstances. *State v. Martinez*, 95 N.M. 795, 626 P.2d 1292 (Ct.App.1979). In each of the elements instructions, covering the eight separate counts of fraud, the trial court instructed the jury that the State had to prove, inter alia, that "defendant, by any words or conduct, made a promise she had no *intention* of keeping ..." (emphasis added). In six of those instructions we find the additional language "intending to deceive or cheat".

Thus, all the tendered instruction does is restate in a slightly different manner what has already been covered by oth-er instructions. "Ordinarily, a defendant is not entitled to a specific instruction where the jury has already been adequately instructed upon the matter by other instructions." *State v. Venegas*, 96 N.M. 61, 628 P.2d 306 (1981) (citation omitted). Our reading of *Venegas* leads us to conclude that whenever an intent instruction involving the defendant's mental state is given, the mistake of fact concept is automatically included and does not merit a separate instruction. Without deciding whether the evidence defendant presented supports her asserted defense, we hold that the instructions given adequately covered any mistake of fact claim.

The trial court did not err in refusing to give defendant's tendered instruction on mistake of fact.

## 2. Business records

Defendant contends that the trial court erred in admitting into evidence State's Exhibits 40 and 41: telex communications between a Denver bank and a Brussels bank regarding collection on a draft drawn on the Saudi Arabia Bank of Belgium signed by defendant and made payable to a third party. The Belgian bank informed the Denver bank that "Bank of Belgium totally unknown in Belgium we have checked private address appearing on check maker unknow [sic]. We also confirm drawer entertains no account in our bank." Ms. Stevens, a representative of the Denver bank through whom these exhibits were offered, testified on tender, that these communications were not actually made in the ordinary course of business at the time the check in question was returned but that they should have been, since the reason for the return was not clear. She made the inquiry sometime later at the request of the prosecutor in the present case, but said she made the follow-up inquiry in the course of the Denver bank's business in order to protect that bank.

Defendant complains that these records should not have been admitted under the NMSA 1978, Evid.R. 803(6) (Repl.Pamp. 1983) exception to the hearsay rule because

the messages were not sent out at or near the time of the bank's attempt to collect on the draft nor were they a part of the bank's regularly conducted business activity.

[5] Assuming, without deciding, that the messages did not fall within the business records exception, any error in admitting them was harmless. *State v. Martinez*, 99 N.M. 48, 653 P.2d 879 (Ct.App. 1982). There was other testimony, without the message, to establish that SABB did not exist at the address shown on the checks and was unknown in Belgium. The Belgian police officer testified as to his own investigation. Defendant did not cross-examine. Ms. Stevens could find no such bank in the reference book she examined. Moreover, defendant never really challenged this evidence. She argued that SABB existed on paper but that Joseph Ayoub never got it off the ground. Thus, we hold that in light of this cumulative and unchallenged evidence, defendant was not harmed by the admission of the two exhibits.

We affirm the judgment and sentence. **IT IS SO ORDERED.**

WOOD and HENDLEY, JJ., concur.