STATE of South Dakota, Plaintiff
and Appellee,

v.

Richard JOHNSTON, Defendant
and Appellant.

No. 17164.

Supreme Court of South Dakota.

Considered on Briefs March 18, 1991.

Decided Oct. 30, 1991.

Diane Best, Asst. Atty. Gen., Pierre, for plaintiff and appellee; Roger A. Tellinghuisen, Atty. Gen., Pierre, on the brief.

Mark F. Marshall, Bangs, McCullen, Butler, Foye & Simmons, Rapid City, for defendant and appellant.

HENDERSON, Justice.

## PROCEDURAL HISTORY/ISSUES

On September 1, 1989, Richard Johnston (Johnston) was charged with 19 counts of Grand Theft in violation of SDCL 22–30A–1 and SDCL 22–30A–17(2). The pertinent statutes are set forth in detail at the end of this opinion. He was further charged with 17 counts of Misuse or Alteration of a Brand in violation of SDCL 40–19–25.

On March 1, 1990, Johnston was convicted on each of the 19 counts of Grand Theft and the 17 counts of Misuse or Alteration of a Brand.

Johnston filed motions for a new trial on April 4 and on May 4, 1990. Both these motions were denied. On appeal, Johnston raises two issues:

(1) Did the trial court err in failing to give Johnston's theory of defense jury instructions where those instructions were properly requested, correct statements of the law, and were supported by the evidence? We hold that it did not.

(2) Did the trial court err in ruling that the conduct charged constituted nineteen separate counts of grand theft instead of one count; and seventeen separate counts of misuse or alteration of a brand instead of one count? Under the evidence in this trial, we hold there is evidence to sustain one count of grand larceny and seventeen counts of misuse or alteration of a brand. Thus, we uphold eighteen felony convictions.

We affirm in part, reverse in part.

## FACTS

Johnston is a rancher in Meade County, near New Underwood, South Dakota. His ranch land covers an area both north and south of the Cheyenne River. His ranch is bordered on the west by land rented by Scott Shoun and owned by Carl Shoun.

In March 1986, Johnston's neighbor Scott Shoun entered into an agreement with a rancher from Montana, Russel Larson (Larson), to pasture Larson's cows for a share of the calf crop. Larson's cows were branded on the right rib with his brand, Lazy D over E. Additionally, each cow had a steel brucellosis tag in its right ear, along with a "Bangs" tattoo.

In addition to these identifications, Larson tattooed his own ranch identification number in each ear. He also inserted a plastic tag in the left ear of each cow. Further, Scott Shoun had also inserted his own yellow plastic identification tag in the cattle that he was keeping for Larson.

Evidence reflected that Scott Shoun's pasture also contained two cows which strayed across the Cheyenne River from his Uncle Carl Shoun's ranch during the summer of 1988. These cows were identified with a Cross A brand on the left hip.

During the fall of 1988, Scott Shoun and Larson determined that some of the cattle were missing from Scott Shoun's pasture. This was not reported to the appropriate authorities. It was also determined that Carl Shoun's two cows were also missing from his nephew's pasture. These were reported to the South Dakota Brand Board.

Eventually, the missing cattle were found on Johnston's property in August of 1989. During a routine ride near the Johnston fence line, Scott Shoun spotted cows that had the Lazy D over E brand on them. The brands had been altered or defaced. After this discovery, Scott Shoun removed three cow-calf pairs from Johnston's pasture. Each of the three cow's brand differed.

On August 24, 1989, the Sheriff's Office and two brand inspectors went to Johnston's pasture. In all, 24 animals were removed from Johnston's pasture. Of the 19 in question, ten were cows and nine were calves. Eight of the cows were rebranded. The remaining two were not rebranded but had Larson's tags; nine calves were branded with Johnston's brand.

## DECISION

I. *The trial court correctly denied Johnston's proposed theory of defense instructions.*

Johnston argues that the trial court erred in failing to give his theory of de-

fense jury instructions where those instructions were properly requested, correct statements of the law, and supported by evidence. Specifically, Johnston wanted instructions regarding (1) ignorance or mistake of fact and (2) intent as it relates to commission of grand theft and the defrauding of another by altering a brand.

■ Jury instructions are to be considered as a whole, and if the instructions when so read correctly state the law and inform the jury, they are sufficient. *State v. Huber*, 356 N.W.2d 468 (S.D.1984). Also, it is well settled in South Dakota that it is not error for a trial court to refuse to amplify instructions given which substantially cover the principle embodied in the requested instructions. *State v. Gillespie*, 445 N.W.2d 661, 664 (S.D.1989); *State v. Weisenstein*, 367 N.W.2d 201, 206 (S.D.1985).

■ In the present case, the jury instructions as a whole, fairly presented the issue to be tried and sufficiently protected Johnston's rights. We cannot fault the trial court for, indeed, it instructed the jury on the elements of the crimes of grand theft and brand alteration. Additionally, it instructed the jury as to the requisite intent for each crime.

■ Further, we approve of a holding in the New Mexico Court of Appeals which determined that "whenever an intent instruction involving the defendant's mental state is given, the mistake of fact concept is automatically included and does not merit a separate instruction." *State v. Griscom*, 101 N.M. 377, 683 P.2d 59 (N.M.App. 1984). We therefore hold that the instructions given adequately covered any mistake of fact claim.

II. *Johnston's conduct constituted one act of Grand Theft and seventeen acts of Misuse or Alteration of a Brand.*

■ Johnston's second contention on appeal is that he was improperly convicted on 19 counts of Grand Theft and 17 counts of Misuse or Alteration of a Brand. He contends the State's position may be framed as follows: that these thefts were pursuant to one intention, general plan or scheme. Therefore, he posits that his conduct amounts to only one count of grand theft. He relies on the well-established rule that in a series of takings from the same individual, there is a single theft if the takings are pursuant to one continuing impulse, intent, plan or scheme, but multiple counts if each taking is the result of a separate independent impulse or intent. Annot. 53 A.L.R.3d 398 (1973); Z.R. Anderson, Wharton's Criminal Law & Procedure § 450 (1957); *State v. Kieffer*, 17 S.D. 67, 95 N.W. 289 (1903). We adopt this authority and readopt this reasoning holding that where the State obtains an indictment or files an information or complaint which contains multiple charges that are premised upon a series of takings from one victim, the fact finder may, upon trial of those charges, determine if the successive takings are associated with a single sustained criminal intent or if each taking is the result of a separate independent impulse or intent. Those convicted of such crimes may, on appeal, challenge the sufficiency of the evidence which supports the jury's verdict. *See, State v. Pedroncelli*, 100 N.M. 678, 675 P.2d 127 (1984). This is precisely the advocacy before us.

Johnston argues the only reasonable conclusion supported by the evidence is that all the takings and brandings were, at best, pursuant to one general intent or scheme. In any event, he urges there is no reasonable basis in the record for concluding that he had 19 separate schemes of Grand Theft and 17 separate schemes of Misuse or Alteration of a Brand. We find some merit in Johnston's argument. Whether there were separate independent takings or one general scheme is a question of fact for the jury, based on the particular circumstances of each case. *People v. Robinson*, 97 Misc.2d 47, 411 N.Y.S.2d 793 (1978); *State v. Vining*, 2 Wash.App. 802, 472 P.2d 564 (1970). Thus, our standard of review is whether or not there is evidence in the record, which if believed by the jury, is sufficient to sustain a finding of guilty beyond a reasonable doubt on each count. In making this determination, this Court will accept that evi-

dence and the most favorable inferences that can fairly be drawn therefrom which will support the verdict. *State v. Wilson*, 297 N.W.2d 477 (S.D.1990). We must now judicially weigh the counts under consideration.

*19 Counts of Grand Theft*

■ As stated previously, determining if there were separate independent takings or one general scheme is a question of fact based on the particular circumstances of each case. In the absence of any evidence from which it could reasonably be inferred that Johnston had 19 separate intents and plans, the only reasonable conclusion supported by the record is that Johnston had a single continuing plan or scheme for stealing certain cattle from Scott Shoun. *See, Annot., supra*, 53 A.L.R.3d at pp. 402–403, 409–415. We believe Johnston should have been convicted of only a single grand theft. As an example, we examine *State v. Akers*, 106 Mont. 105, 76 P.2d 638 (1938). In *Akers*, the defendant was charged with the theft of two horses in two separate counts. The court submitted the question whether there was, in fact, more than one taking to the jury under instructions to this effect: if the theft of the two animals were at different times and at different places, each would be a separate offense, whereas, if the theft of both were parts of one act of stealing, they would constitute but one crime. The defendant was convicted on both counts. On appeal, the Montana Supreme Court upheld his conviction.

The Montana Supreme Court reasoned that each of the two animals was in a different group and was on a different part of the range, making it impossible for the actual control over the animals to be simultaneous. There was evidence of record that each horse was in a separate group. A witness testified that he took actual control of the first group, drove them a distance, then left them. He then proceeded to get a second group started and then finally the third group was rounded up. The evidence showed that the two horses were not ranging together and were only brought together by the unlawful act of the defendant.

In the present case, the animals were not in different herds. Scott Shoun testified that "in 1988 the cows were short on water and the cows were hanging down on the river ..." From this testimony, it is reasonable to conclude that the animals were part of one group. In the Montana case, a witness testified as to his role in the horse stealing. That, of course, helped the jury conclude that these horses were taken at separate times from separate areas—hence with separate intents. In the present case, there is not a witness similar to the Montana case, to aid in obtaining a conviction. State failed to produce a witness who could say that Johnston stole the cattle at separate times with separate intents. Nor can we find circumstantial evidence in the record to support separate times of separate intents. In short, no evidence existed to establish that Johnston had 19 separate intents and plans.

In finding that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, we hold, however, that the evidence is sufficient to support Johnston's conviction as to one count of grand larceny and we reverse and set aside the remaining grand larceny convictions.

*17 Counts of Misuse or Alteration of a Brand*

■ Johnston also argues that the trial court erred in ruling that the conduct charged constituted 17 separate counts of misuse or alteration of a brand instead of one. Johnston extends his argument on 19 counts of grand theft to the misuse of alteration of a brand. However, violation of the brand registration and use statutes is not a theft. Thus, the "continuing plan or scheme" theory is not applicable to this argument. We are only concerned with whether or not there is evidence in the record, which if believed by the jury, is sufficient to sustain a finding of guilty beyond a reasonable doubt on each count. *Wilson, supra*. There was sufficient evidence in the record to conclude that Johnston branded and rebranded 17 cattle. All nine calves that belonged to the cattle stolen from Scott Shoun's pasture carried

Johnston's brand. Considering that the brand alterations were accompanied by the removal of ear tags, it is apparent that Johnston did not mistakenly brand the cattle. The remaining cattle were rebranded with Johnston's brand. Based upon this evidence and drawing the most favorable inferences therefrom, we affirm Johnston's 17 separate convictions of misuse or alteration of a brand. *State v. Dale*, 379 N.W.2d 811, 813 (S.D.1985) (quoting *State v. Moeller*, 298 N.W.2d 93, 94 (S.D.1980)).

The judgment of conviction on the 19 counts of grand theft is modified to conviction on one count of grand theft. Upon remand, the trial court should resentence Johnston in a manner consistent with this opinion. The judgment of conviction on the 17 counts of misuse or alteration of brand is affirmed.

Grand theft is set forth in SDCL 22–30A–1 and SDCL 22–30A–17:

> 22–30A–1: Any person who takes, or exercises control over, property of another with intent to deprive him of it, is guilty of theft.

> 22–30A–17: Theft is grand theft, if:

> (1) The value of the property stolen exceeds two hundred dollars;

> (2) The property stolen is livestock or a firearm;

> (3) Property of any value is taken from the person of another; or

> (4) In the case of theft by receiving stolen property, the receiver is a dealer in stolen property, the value of the property stolen exceeds two hundred dollars in value, or the property stolen is livestock or a firearm.

> Theft in all other cases is petty theft. Grand theft is a Class 4 felony. Petty theft is divided into two degrees. Petty theft of one hundred dollars or more is in the first degree and is a Class 1 misdemeanor. Petty theft of less than one hundred dollars is in the second degree and is a Class 2 misdemeanor.*

Brand alteration is prohibited by SDCL 40–19–25:

> Any person who, with intent to defraud, brands or marks any cattle, horse, sheep, buffalo or mule, not his own; intentionally brands over a previous brand or in any manner alters, defaces or obliterates a previous brand; or cuts out or obliterates a previous brand on any cattle, horse, sheep, buffalo or mule is guilty of a Class 5 felony.

Affirmed in part, reversed in part and remanded.

WUEST, SABERS and AMUNDSON, JJ., concur.

MILLER, C.J., dissents.

MILLER, Chief Justice (dissenting).

Rather than reversing and remanding for re-sentencing, I would reverse and remand for a new trial on all charges.

GRAND THEFT COUNTS

Although I agree with the majority's analysis of the "continuing plan or scheme" principle, I assert that it is misapplied. It is for the jury, and not this Court, to ascertain whether the conduct of defendant amounted to more than one offense.

In *State v. Kieffer* 17 S.D. 67, 72, 95 N.W. 289, 291 (1903), cited by the majority, we said:

> It was for the jury to say, therefore, under the instruction of the court, whether or not the animal which the accused was charged with feloniously taking ... was taken at the same time with the other animals alleged to have been feloniously taken by him.

The importance of this jury finding was that if the animals were taken at the same time it equaled one offense. Likewise, in this case, if the jury would have found that there was "a continuing impulse, intent, plan, or scheme," Johnston could only have been convicted on one count. However, under appropriate instructions, they would have an opportunity to find, should the

---

* This statute was revised in 1990. The 1990 amendment increased the monetary limit for grand theft from two hundred dollars to five hundred dollars, and deleted subdivision 2.

These changes did not become effective until July 1, 1990, after Notice of Appeal was filed in the case at bar.

evidence permit, that there was no such continuing intent, and thus find him guilty of other thefts. In this 'case, no such instruction was presented to the jury.

Many of the jurisdictions following the general rule espoused by the majority, expressly recognize that whether the continuous intent, scheme or plan exists is a question for the jury. *See Kieffer, supra; People v. Bailey,* 55 Cal.2d 514, 11 Cal.Rptr. 543, 360 P.2d 39 (1961); *Woods v. People,* 222 Ill. 293, 78 N.E. 607 (1906); *State v. Vandewater,* 203 Iowa 94, 212 N.W. 339 (1927); *Horsey v. State,* 225 Md. 80, 169 A.2d 457 (1961); *Ex parte Jones,* 46 Mont. 122, 126 P. 929 (1912); *State v. Sampson,* 120 N.H. 251, 413 A.2d 590 (1980); *State v. Pedroncelli,* 100 N.M. 678, 675 P.2d 127 (1984); *State v. Elliott,* 89 N.M. 756, 557 P.2d 1105 (1977); *State v. Allen,* 59 N.M. 139, 280 P.2d 298 (1955); *People v. Robinson,* 97 Misc.2d 47, 411 N.Y.S.2d 793 (1978); *People v. Hunt,* 7 Misc.2d 320, 166 N.Y.S.2d 524 (1957); *Barnes v. State,* 43 Tex.Crim. 355, 65 S.W. 922 (1901); *Cody v. State,* 31 Tex.Crim. 183, 20 S.W. 398 (1892); *State v. Vining,* 2 Wash.App. 802, 472 P.2d 564 (1970) (courts stated this was a question for the jury to determine under a proper instruction). Therefore, we should remand for a new trial with appropriate instructions (in that regard, I agree with the majority's disposition under its issue I.)

## COUNTS OF MISUSE OR ALTERATION OF BRAND

I simply cannot agree with the majority's statement that "violation of the brand registration and use statutes is not a theft." That is not, in my opinion, necessarily true.

The statute, SDCL 40-19-25, reads as follows:

> Any person who, with intent to defraud, brands or marks any cattle, horse, sheep, buffalo or mule, not his own; intentionally brands over a previous brand or in any manner alters, defaces or obliterates a previous brand; or cuts out or obliterates a previous brand on any cattle, horse, sheep, buffalo or mule is guilty of a Class 5 felony.

Theft is defined as follows in SDCL 22-30A-1:

> Any person who takes, or exercises control over, property of another with intent to deprive him of it, is guilty of theft.

While SDCL 40-19-25 does not specifically categorize the offense as theft, the acts contra to such statute would in many cases amount to theft as defined in SDCL 22-30A-1. A person who takes and re-brands another's steer, so that it appears to be his own, clearly could violate the theft statute. Does not a cowboy who sneaks into his neighbor's pasture and re-brands that neighbor's cattle with his own brand, in reality exercise control with intent to deprive over those cattle (especially knowing the customary ranching practices in this state of returning branded cattle, irrespective of their location, to the owner of the brand)? Any experienced cattleman would surely recognize that in many instances, including the case at bar, re-branding or brand altering constitutes a theft.

Therefore, these counts must be reversed and remanded for retrial with the appropriate instructions, as in the theft cases above.

## SUMMARY

I would reverse and remand for a new trial so that the jury may, under the appropriate instructions, ascertain whether Johnston is guilty of a single or multiple counts of grand theft and misuse or alteration of a brand.