*982 OPINION OF THE COURT
Aaron F. Goldstein, J.
These are separate motions by separate defendants to inspect the Grand Jury minutes in their respective cases and based on such inspection, to dismiss the indictments. Inasmuch as the issues in all cases are the same, they will be considered together in this single opinion for the limited purpose of the motions to dismiss.
The indictments, in separate counts, charge the various defendants with the felony of grand larceny in the theft of electricity from the Consolidated Edison Company, and also with the theft of services, a class A misdemeanor, with respect to the same electricity. Basically, the indictments are founded on proof presented to the Grand Jury that there was a tampering with meters measuring the electricity supplied to premises allegedly owned or operated by the various defendants, with the result that the electricity passed through those meters without proper measurement and consequently without proper charge. There are five basic questions presented for consideration:
(1) May electric current be the subject of larceny in the first instance, and if it may, is meter tampering a sufficient "asportation” to constitute a larceny of the electricity?
(2) Does the enactment of the special misdemeanor provision regarding theft of services exclude prosecution of the theft as a larceny?
(3) Is the presumption created by the misdemeanor meter-tampering section constitutional?
(4) Are any presumptions applicable to the alleged larceny of the electricity?
(5) Is the evidence presented to the Grand Jury in these cases legally sufficient to uphold the indictments?
I. THE LARCENY OF ELECTRICITY
While concededly the question of larceny of electricity has not often been the subject of adjudication, nevertheless in all the cases where the issue has in fact been directly confronted, the judicial answer has been uniform and unanimous: metered electricity, as well as natural gas, water in pipes, heat, power, and similar forms of "intangible” energy, are of sufficient "concreteness” to be the subject of larceny. The absence of New York case law dealing with the issue calls for an examination of the decisions in other jurisdictions. In all *983 the cases, of course, the issue is governed by the specific terms of the applicable criminal statutes, and before turning to the precise language of the New York law, it should be pointed out that our statute is at least as broad, and often more so, than the statutes considered in the other jurisdictions.
As far back as 1918, the commentator in Lawyers Reports Annotated found no difficulty in stating categorically that "It is well settled * * * that water and gas in pipes, as well as electricity, may be subjects of larceny.” (LRA, 1918C, 580, citing English and American cases dating back to 1853.) In 1922, LRA’s successor, American Law Reports, posited the flat proposition that a diversion of gas from pipes so as to avoid a meter constitutes an "asportation” sufficient to support a charge of larceny (19 ALR 724, 729), and then in 1938 a follow-up annotation was published confirming the basic proposition that water, electricity, and gas may be the subjects of larceny, without a single case in opposition. (113 ALR 1282.) Admittedly, the cases cited in all these secondary sources are few, and involve decisions from England, the Phillipines, and Canada, as well as from this country, but we rely here not so much on the decisions as authorities which bind us, but rather on the immutable logic behind those decisions. In 1937, some years after these annotations, the Supreme Court of Illinois considered the subject in depth, evaluating not only the reported cases, but as well, the testimony of an electrical engineer as to the precise nature of electrical energy. After reviewing a number of State decisions (Pennsylvania, New York, Colorado, New Jersey, Nebraska, West Virginia, Alabama, Indiana) and one United States Supreme Court decision, Ashwander v Tennessee Val. Auth. (297 US 288), all of which affirmed that electrical energy is personal property, specifically a "commodity” or a "manufactured product” within the meaning of civil statutes governing the taxation and regulation of manufacturing companies, the Illinois court adopted the rationale of the previous electricity-larceny decisions, quoting extensively therefrom. Thus, the court repeated that: " 'The true tests of what is a proper subject of larceny seems to be not whether the subject is corporeal or incorporeal, but whether it is capable of appropriation by another than the owner. It is well settled that illuminating gas may be the subject of larceny, even in the absence of a statute so providing. * * * Electricity, the same as gas, is a valuable article of merchandise, bought and sold like other personal *984 property and is capable of appropriation by another.’ ” (People v Menagas, 367 Ill 330, 337.)
A number of additional cases, postdating the annotations previously cited, take the same position: Reynolds v State (101 Ga App 715); Helvey v Wabash County REMC, (278 NE2d 608 [Ind]); State v Curtis (148 NJ Super 235); Selman v State (406 P2d 181 [Alaska]); and People v Kraus (377 Ill 539). In sum, the bald proposition that electricity may be the subject of larceny cannot now, at this late date, admit of any doubt. Indeed, research reveals not one single decision to the contrary.
Significantly, defense counsel, presumably searching the law with at least a modicum of care, cite no case opposing the use of a larceny statute to cover the theft of electricity. In the one New York decision cited as taking a contra view, People v Ashworth (220 App Div 498), what was actually involved was the use by defendant of the facilities of a mill, its machinery, etc. (which is to say a use of machinery in place as opposed to a carrying away of a product like electricity), and as a matter of fact that very same decision, in denying that such use of facilities could constitute a larceny, nonetheless acknowledged in the clearest possible language that "Electricity and gas have been held to be the subject of larceny” (220 App Div 498, 501-502, supra), so that the very case, and the only case, cited by defense counsel in support of the defense position, is actually authority to the direct contrary.
The cases and annotations, in holding that electricity may be the subject of larceny, are necessarily holding that it is property subject to asportation, and in most of the cases the asportation occurs by means of a diversion of the current or water from the meter which measures the flow from supplier to consumer. Examination of the New York statute supports the view that an asportation occurs by meter tampering. The asportation sections of our larceny statute are embodied in article 155 of the Penal Law. Larceny is defined as a "taking, obtaining or withholding” of "property” with the intent either to "deprive” another of said "property” or to "appropriate” same for one self or another. (Penal Law, § 155.05, subds 1, 2.) "Property” is defined to include "any article, substance or thing of value” (Penal Law, § 155.00, subd 1). "Deprive” is defined to include withholding the property "under such circumstances that the major portion of its economic value or benefit is lost to” the owner (Penal Law, § 155.00, subd 3). *985 Clearly, then, the meter tamperer who, by such tampering, has received electric current without payment hás "taken” or "obtained” an "article of value” under circumstances amounting to a "deprivation” in that "the major portion” of the "economic value” of this "property” is lost to the owner. It follows without any possibility of doubt that where the meter tamperer receives for himself the diverted electricity he has thereby committed larceny under the New York statute.
II. THE EFFECT OF THE MISDEMEANOR "THEFT OF SERVICES” SECTION
It is contended by defense counsel that the Legislature, in enacting the detailed theft of services section of the Penal Law (§ 165.15) has, by that section, in effect pre-empted the field with respect to meter tampering, with the result that every case of such tampering involves simply a theft of services and nothing more. If the Legislature intended a theft of electricity to constitute a larceny, defense counsel argues, then it would simply have enacted an additional larceny subdivision including the theft of electricity as one of the higher or lower degrees of larceny itself.
The argument, for all its superficial appeal, is an excellent example of the widespread confusion with respect to the search for the "legislative intention” in statutes generally and in penal laws specifically. That judicial search, continuous, persistent, often tortured, has yielded a number of elementary rules known as canons of statutory construction, and it is with respect to one of these canons that defense counsel suffers a misapprehension. Thus, where two statutes, or two separate provisions in one statute, are in conñict with each other, and one of the provisions is general in nature while the other is specific, then it is settled law that the provision which is specific will control. (People ex rel. Knoblauch v Warden, 216 NY 154, 156-157.) The defense argument, without citing the rule itself, or for that matter any cases thereunder, nevertheless represents acutally an instinctive attempt to apply this principle. Thus, larceny is general, while meter tampering is specific, ergo in every meter-tampering case the specific theft of services provision prevails, to the exclusion of the general larceny sections. This, runs the argument, is what the Legislature must have "intended”. But the argument ignores the very underpinning of the canon, which is simply that the general versus specific rule is applied only where the two provisions are in irreconcilable conñict with each other. There *986 is no conflict at all here — both provisions are in utter harmony. It is perfectly true that both provisions impose, in some areas, different punishments for the same acts, but this is hardly a conflict, rather it is coalescence, and yet another canon is thereby called into play, wherever possible, all parts of a statute are to be read together, construed together, and harmonized with each other. (Levine v Bornstein, 4 NY2d 241; see, also, McKinney’s Cons Laws of NY, Book 1, Statutes, §§ 97, 98.) To put the matter another way, and to cite what is perhaps the most elementary canon of all, there must never be a search for the elusive "legislative intention” where the words of a statute are perfectly clear. (Meltzer v Koenigsberg, 302 NY 523.) In other words, if a statute says with clarity, that a taking of electricity shall constitute larceny and shall also constitute a theft of services, then those two statements, posed clearly in separate sections, represent the actual legislative intention: a person who steals electricity commits two separate crimes.
Statutory duplication is hardly a new phenomenon — it is, rather, the general practice in penal legislation. Thus, the thief who, by means of extortion, appropriates for his own use a $2,000 automobile commits, under the New York Penal Law, at least seven crimes: three separate and distinct degrees of grand larceny (Penal Law, §§ 155.40, 155.35, 155.30), petit larceny (Penal Law, § 155.25), three separate and distinct degrees of criminal possession of stolen property (Penal Law, §§ 165.40, 165.45, 165.50) and finally, unauthorized use of a vehicle (Penal Law, § 165.05, subd 1). Each of these seven crimes is delineated in separate provisions of the law, and the extortion of the $2,000 automobile could properly be covered by any one or all of those separate provisions. The logic of the defense position would have us argue that larceny and possession of stolen property are general concepts, whereas, the use of an automobile without the owner’s permission is completely specific, wherefore only the misdemeanor of unauthorized use was "intended” to apply where the property which is taken is an automobile. Manifestly, the argument crumbles of its own weight.
The duplication process occurs in almost all the multiple areas of penal legislation. Thus, the offender who commits the highest degree of any given crime thereby automatically commits the lowest degree as well, to say nothing of other *987 additional related crimes in separate areas of the law, e.g., burglary, trespass, bribery, unlawful gratuities, arson, criminal mischief, resisting arrest, obstructing governmental administration, rape, assault, etc. So pervasive is this duplication that the Legislature itself, recognizing and thereby confirming its own repetitions, has expressly afforded constitutional protection to defendants by way of barring duplicate punishments for the same act, and delineating specific instructions for the withdrawal of duplicative counts from a jury’s consideration. (Penal Law, § 70.25, subd 2; CPL 300.30, 300.40, 300.50.) It is in fact probable that in most meter-tampering situations the misdemeanor theft of services will constitute as to larceny a lesser included offense. This will depend on the factual situation in each case — for the application of the lesser included offense definition in CPL 1.20 (subd 37) must be handled on a case to case basis. (People v Johnson, 39 NY2d 364.) If this proves to be the situation, the Trial Judge is commanded, under the sections just cited, to protect the defendant by eliminating submission of legislatively defined "concurrent counts” in an indictment. But this is hardly a command to dismiss any such counts in advance of trial. The validity of an indictment is not affected by duplicative counts —the only kind of duplication which is prohibited is that which occurs within one count itself, which is to say each single count of an indictment "may charge one offense only.” (CPL 200.30.) (Parenthetically, it must be added that the theft of services provision in our law embraces a good deal more than the supply of electricity. It covers such items as restaurant, hotel, railroad, subway, and bus services, etc., with the result that in many instances the larceny statute may not apply, as where only a service, as opposed to a commodity, is involved. But where, as here, there is both a service and an actual commodity, then both the larceny and theft of services are applicable.)
We should note, by way of final addendum, that in most of the previously cited decisions, the courts, without discussing the matter in depth, simply indicated that prosecution of a theft of electricity as larceny was permissible notwithstanding the existence of special statutes covering meter tampering as a separate offense. (Reynolds v State, 101 Ga App 715, supra; Selman v State, 406 P2d 181 [Alaska], supra; People v Menages, 367 Ill 330, supra; and see cases cited in 113 ARR 1286-1287.)
*988 III. THE CONSTITUTIONALITY OF THE METER-TAMPERING PRESUMPTION
The "theft of services” section of the Penal Law (§ 165.15) embodies a number of presumptions, chief of which provides in substance, that proof of meter tampering shall be presumptive evidence that the recipient of the service has created that condition. Defense counsel attack this as unconstitutional in that the created inference is not reasonably related to the underlying condition. Here again, we disagree. We should interject now that this statutory presumption is actually not at all the absolute prerequisite for successful prosecution that both the District Attorney and defense counsel here seem to assume. We might point out, for example, that by the statute itself, the presumption in question is available only in prosecutions "under this subdivision” (Penal Law, § 165.15, subd 5) which means that it may be utilized only in theft of services prosecutions and not for larcenies. However, there are other evidentiary tools available in the larceny situation, and we shall deal with them shortly. Meanwhile, as to the constitutionality of the theft of services presumption, we have been able to locate only one New York decision which considered the problem, and in that decision the constitutionality of the presumption was forcefully upheld. Thus, the current meter-tampering presumption is simply a reenactment of section 1431 of our predecessor Penal Law. In Eff-Ess Inc. v New York Edison Co. (237 App Div 315) the court, upholding the constitutionality of the presumption, applied the classical test that a presumption, to be consistent with due process, must embody " 'a rational connection between what is proved and what is to be inferred’ ”. The court then observed (p 317) that the meter-tampering presumption "is an inevitable inference resulting from the fact that the subscriber is the only party who could possibly benefit from tampering with the meter.” And only a few short months ago, the Superior Court of New Jersey, in a full and well-reasoned opinion, upheld a similar presumption created by the New Jersey Legislature, relying heavily on the New York decision in Eff-Ess (supra); State v Curtis (148 NJ Super 235, supra). Defense counsel’s argument that the presumption unconstitutionally shifts the burden of proof reveals a misperception of the nature of presumptions in criminal proceedings. The burden of proof, of course, is never shifted — this is true in all presumptions. As explained in State v Curtis (supra, pp 240- *989 241), "the statutory terminology of 'presumptive evidence’ merely has the effect of permitting an inference to be drawn from the established facts that another fact exists without the necessity of proof of the inferred fact. It does not mandate guilt. Nor does it obviate the fundamental burden of the State to prove the elements of the offense beyond a reasonable doubt”. A recent Second Circuit court case was considered and found to be inapplicable. (Allen v County Ct. of Ulster County, 568 F2d 998.)
So much for the sepcial meter-tampering presumption. We turn now to the heart of the evidentiary problem in these cases, the available tools in the prosecution of the theft of electricity as larceny.
IV. PRESUMPTIONS AND CIRCUMSTANTIAL EVIDENCE IN LARCENY OF ELECTRICITY
We have already indicated that the cases agree unanimously that electricity is a commodity which may be the subject of larceny, and that an asportation occurs when there is a tampering with the meter which has the effect of diverting the electricity to the gain of the subscriber at the expense of the supplier. From this there would seem to follow an imperative corollary: The moment the electricity is "asported” in the described manner, the subscriber is instantaneously in possession of stolen property, to wit, the wrongfully asported electricity. One of the most frequently applied principles in criminal law involves the presumption (of guilty knowledge) which attaches to those in recent exclusive possession of stolen property. (See 52A CJS, Larceny, § 105.) As a matter of fact, this very presumption, long held immune from constitutional attack, was referred to in terms of direct analogy by the Appellate Division in the Eff-Ess case (supra). There, the court explained that "At common law an inference of guilt attached to the possession of stolen goods without explanation * * * There is no difference in principle in charging a man with guilty possession in whose custody one’s property is found a short time after a robbery from similarly charging a subscriber who has consumed current which concededly has been stolen and not paid for.” (Eff-Ess, Inc. v New York Edison Co., 237 App Div 315, supra.)
The nature of the common-law presumption was the subject, in our State, of another of Judge Cardozo’s celebrated decisions. In People v Galbo (218 NY 283), the learned Jurist explained that the presumption simply raises an inference of *990 fact which may be neutralized or repelled by yet other facts. Whether the possessor of stolen property is guilty of the original larceny, or merely of "receiving”, or perhaps some other related offense, is simply a factual question for the jury, with the presumption utilized as a permissible aid in the fact-finding function. And see People v Colon (28 NY2d 1) for a recent recapitulation of the Galbo principles.
Admittedly, the concept of "possession” of stolen electricity does pose problems. It is difficult, perhaps even impossible to "possess” an intangible such as electric current. As for "constructive” possession, a number of courts will not apply the common-law presumption in such situations. (52A CJS, Larceny, § 107.) And under our own Penal Law, the crime of criminal possession of stolen property (Penal Law, §§ 165.40, 165.45, 165.50) cannot be committed with respect to intangible property, for the very word "possess” is defined only in relation to "tangible” property. (Penal Law, § 10.00, subd 8.) But that definition applies to the word "possess” as used in our Penal Law, and does not control the meaning of the word with relation to the common-law concept of possession of stolen property. Accordingly, we are inclined to accept the most persuasive Appellate Division analogy in the Eff-Ess decision, to the extent of holding now that the common-law presumption regarding possession of stolen property may appropriately be applied to the receiver of stolen electric current.
Furthermore, we are not limited to the application of this common-law presumption. Where we have, as we do here, a proof of actual tampering as opposed to malfunction, plus a proof of protracted and continuous receipt of current charge, or at inordinately low charge, we have a classic case of circumstantial evidence. And the suggestion has never been successful that an indictment may not be grounded on circumstantial evidence. The only limitation is that such circumstantial evidence must exclude, to a moral certainty, every reasonable hypothesis except guilt. (People v Eckert, 2 NY2d 126.) And search as we may, we are unable to extract any reasonable hypothesis as to why someone other than the subscriber himself would tamper with a meter so as to deprive the supplier of its lawful charges. Vandalism? Not with respect to the deliberate purposeful kind of diversion we find in these cases — vandalism is simply, here, not a reasonable alternate hypothesis.
Accordingly, and for all the reasons just discussed, we hold *991 that proof of purposeful tampering with a meter measuring electric current will, if unexplained and uncontradicted, constitute sufficient evidence to support a conviction for larceny of electricity by the subscriber, always provided, of course, that where a corporate or company subscriber is involved, additional proof is presented that any individual defendant indicted for the larceny participated in active management of the enterprise to such an extent that knowledge of the situation relating to the receipt of the current without appropriate charge may properly be imputed to such defendant beyond a reasonable doubt.
V. THE LEGAL SUFFICIENCY OF THE EVIDENCE PRESENTED TO THE GRAND JURY
This court has examined the Grand Jury minutes in these proceedings and has applied to such examination the fundamental principles heretofore discussed. As to each of the separate cases, I now decide as follows:
The motion to dismiss is denied in all respects.