OPINION OF THE COURT
Eve Preminger, J.
These cases arise from challenges to a recent amendment to section 165.15 of the Penal Law, concerning theft of services, which was passed to facilitate the conviction of persons tampering with utility meters. Tampering has proven to be extremely costly to utility companies and "almost impossible” to *290 punish. (Hechtman, Practice Commentaries, McKinney’s Cons Laws of NY, Book 39, Penal Law, § 165.15, Pocket Part, pp 25-26.) The new statute provides that proof that a meter has been tampered with "shall be presumptive evidence” that the person to whom the service is being furnished has created the "condition so existing”. Thus, whenever a meter has been tampered with, the statute permits the trier of fact to conclude that the tampering was done by the person who received the metered service.
In each of these cases the People have stipulated that they have no evidence other than the fact that defendant is the subscriber to the metered services and that the meter has been tampered with. The People also concede that without the statutory presumption they would be unable to satisfy their burden of proof. In many instances the meters in question are located in the basement of multi-unit residential buildings, far removed from the apartments of the defendants and accessible to all who enter the building for whatever purpose.
The defendants contend that the statute is unconstitutional and move to dismiss all charges.
The precise legal effect of this, or any other presumption, is far from clear. As Professor Morgan has noted, "Every writer of sufficient intelligence to appreciate the difficulties of the subject-matter has approached the subject of presumptions with a sense of hopelessness and has left it with a feeling of despair.” (Morgan, Presumptions, 12 Wash L Rev 255.)
It is with understandable caution, then, that this court addresses itself to the constitutionality of this section of the Penal Law. Not only is the case law often unclear, and in disarray, but scholars in the field disagree on the scope and effect of presumptions in particular instances. There are at least four different meanings in the law of the term "presumption” (see Lefave and Scott, Criminal Law, § 21), and there may be as many as eight. (Laughlin, In Support of the Thayer Theory of Presumptions, 52 Mich L Rev 195, 196-209.)
At one end of the spectrum are those presumptions which allow a jury to take an established fact as some evidence of a presumed fact. These presumptions are more correctly called "inferences”. The disadvantages which may accrue to a party because of their introduction into a criminal case are usually, but not always, de minimis. At the other end of the spectrum are conclusive presumptions, which so disadvantage the party *291 against whom they are introduced that they are equivalent to substantive rules of law in favor of the party introducing them.
The presumptions which lie somewhere in the middle of the spectrum are the most difficult. These presumptions may shift the burden of persuasion; that is, the burden of convincing the trier of fact that what is alleged is true (Ashford and Risinger, Presumptions, Assumptions and Due Process in Criminal Cases, 79 Yale L Rev 165) or merely shift the production burden, the burden of going forward with the evidence (People v Langan, 303 NY 474; St. Andrassy v Mooney, 262 NY 368; see, also, Richardson, Evidence [10th ed], § 58). In these situations, if the defendant fails to introduce evidence rebutting the basic fact the jury is required to draw a particular inference. (Platt v Elias, 186 NY 374, 379.)
Even these presumptions pose less difficulty than those, the instant presumption among them, which have been classified as "permissive presumptions”. In response to growing recognition that instructing a jury to find against a defendant on any element of an offense raises insurmountable constitutional objections, the instant presumption and others like it have been classified as "permissive”. Permissive presumptions "authorize” the jury, but do not require it, to find the presumed fact from the basic fact. (People v Leyva, 38 NY2d 160; People v McCaleb, 25 NY2d 394; People v McLaughlin, 93 Misc 2d 980.) Thus, assuming in the instant case that defendant introduced no evidence at trial, the jury would be told of the statutory presumption and that it could find the existence of the presumed fact from proof of the basic fact if it chose to do so. (See Notes, Constitutionality of Rebuttal Statutory Presumptions, 55 Col L Rev 527, 528.) Should the jury request any clarification or illumination from the court as to how and why it should make this choice, this court would be hard pressed to provide any.
Leaving this difficulty aside for the moment, what tests have been established to determine the validity of a criminal statutory presumption once it is classified as permissive? The Supreme Court has provided some guidelines, beginning with the requirement that there be a rational connection between the proven fact and the presumed fact. (Tot v United States, 319 US 463; United States v Gainey, 380 US 63; United States v Romano, 382 US 136.) This rational connection test has been further refined to require that it be "more likely than not” *292 that the presumed fact will exist if the established fact exists. (Leary v United States, 395 US 6.)
Although the Supreme Court stated in Tot (supra) that the "rational connection” standard was sufficiently stringent to prevent the impermissible shifting of the burden of proof to a criminal defendant (319 US 463, at p 469), a quarter of a century later in Leary (supra) the court was not so sure. In holding that the presumption in question failed to meet the "rational connection” or "more likely than not” test, the court noted the possibility that the "more likely than not” test was only a minimum test, and that a criminal presumption was not constitutional unless it satisfied a higher standard. Such a standard would require not only that the presumed fact bear a rational connection to the basic fact, but that the presumed fact flow logically from the basic fact, beyond a reasonable doubt. As it found the statute in question deficient even under the more lenient test, the court specifically left open the question: "Whether a criminal presumption which passes muster when so judged [by the more likely than not test] must also satisfy the criminal 'reasonable doubt’ standard if proof of the crime charged or an essential element thereof depends on its use.” (Leary v United States, 395 US 6, p 36, n 64.)
Although the Supreme Court again discussed this question in Turner v United States (396 US 398) and in Barnes v United States (412 US 837) both cases involving common-law presumptions embodied in the Judge’s charge, the issue of whether anything less than a reasonable doubt standard is constitutionally permissible remained unsettled. The lower Federal courts have similarly failed to resolve the matter, (see United States v Moore, 571 F2d 76, 87, n 8; United States v Adams, 293 F Supp 776.) See, also, Notes, The Unconstitutionality of Statutory Criminal Presumptions (22 Stan L Rev 341) where it is argued that the "more likely than not” test can never adequately protect the defendant’s right to have all elements of the prosecutor’s case proved beyond a reasonable doubt.
In New York the courts have subjected criminal presumptions to somewhat sharper scrutiny and have strengthened the "more likely than not” test beyond the Federal case law. A presumed fact must flow from the proven fact with "a reasonably high degree of probability” (People v McCaleb, 25 NY2d 394; People v Leyva, 38 NY2d 160, supra; People v Caban, 90 Misc 2d 43). These cases do not address the reasonable doubt *293 issue, but they do reveal a recognition by the courts of New York of the danger of casual acceptance of presumptions in the criminal law.
Several courts have recently considered the constitutional validity of the instant presumption, and its counterparts in other jurisdictions, but none of these have ruled on the reasonable doubt standard. (See People v McLaughlin, 93 Misc 2d 980, supra; People v Casteneda, 92 Misc 2d 687; State v Curtis, 148 NJ Super 235; MacMillan v State of Florida, 358 So 2d 547 [Fla].) With the exception of the Supreme Court of Florida in MacMillan (supra) each court has upheld the validity of the instant presumption. See, also, Eff-Ess v New York Edison Co. (237 App Div 315) where the Appellate Division rejected a challenge to the predecessor statute. It was "more likely than not”, held the respective courts, that the person who tampered with the meter was the person who received the utility service, even in the absence of other proof. Whether it could be so presumed beyond a reasonable doubt was not considered. In MacMillan (supra, p 549) the Supreme Court of Florida disagreed: "Sub judice, we need not consider whether the subject of statutorily created presumption meets the reasonable doubt standard since we agree with appellant that it does not satisfy the rational connection standard. Under the challenged statute, the presumed fact of intent to violate and of violation comes into play merely upon proof that the property wherein diversion of some sort has occurred is in the actual possession of the accused or upon proof that the accused has received a direct benefit from a utility. We find that it cannot be said with substantial assurance that the presumed fact * * * is more likely than not to flow from the proved fact of possession of the premises or receipt of benefits.”
Despite the cogent arguments advanced in MacMillan, this court is constrained to agree with those courts which have ruled that it is "more likely than not” that the recipient of unmetered electrical service has knowledge of the tampering. The only other possibilities advanced, vandalism or malicious neighbors, are clearly the less likely occurrences. Those possibilities do rule out meeting the reasonable doubt standard. They do not, however, change the fact that the most likely tamperer would generally be the recipient of the services.
Accordingly, it now becomes unavoidable to decide the question so long unanswered by the post-Leary cases: must a *294 criminal presumption which serves to supply an element of a crime satisfy the "beyond a reasonable doubt” standard in addition to the "more likely than not” standard?
At the foundation of our notions of the administration of justice stands the principle that a criminal charge must be established beyond a reasonable doubt. The court, quoting Mr. Justice Frankfurter in Leland v Oregon (343 US 790) stated: " '[I]t is the duty of the Government to establish * * * guilt beyond a reasonable doubt. This notion — basic in our law and rightly one of the boasts of a free society — is a requirement and a safeguard of due process of law in the historical, procedural content of "due process”.’ ” (Matter of Winship, 397 US 358, 362.) More than reaffirming the constitutional statute of the reasonable doubt test, Winship made clear that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged” (397 US, 358, 364; emphasis added).
This holding restated the general understanding of the rule governing proof in a criminal case which had been recognized in Anglo-American law by at least 1700 and probably several centuries prior to that. (See Underwood, Burden of Persuasion in Criminal Cases, 86 Yale LJ 1299, 1302.)
Recently, the Supreme Court has commented upon the principle enunciated in Winship as it applies to presumptions. In Patterson v New York (432 US 197, 211, n 12) the court recognized that the wholesale introduction of statutory presumptions by over enthusiastic legislators may undermine protections established by Constitution and fostered by the courts in the years since. Above all, no presumption can stand constitutional muster that shifts the burden of proof to the defendant. (Mullaney v Wilbur, 421 US 684.) As has been said: 'Mullaney surely held that a State must prove every ingredient of an offense beyond a reasonable doubt, and that it may not shift the burden of proof to the defendant by presuming that ingredient upon proof of the other elements of the offense.” (Patterson v New York, 432 US 197, 215; emphasis added.)
As has been explicitly made clear in Mullaney and in Matter of Winship (397 US 358, supra) the due process clause protects the defendant from presumptions which, absent sufficient evidence, shift the burden of proof to his detriment. That is precisely what would happen were subdivision 6 of section *295 165.15 of the Penal Law allowed to stand. The prosecutor need only cite the section and have instant evidence at its disposal; evidence which, if unrebutted by the defendant, establishes of its own weight that defendant had knowledge of the diversion. But knowledge of the diversion is an essential element of the crime and, as is taught by Winship, it is constitutionally incumbent upon the prosecution to prove every element of the crime beyond a reasonable doubt.
There is, almost by definition, an incompatibility between the prosecutor’s need for a statutory presumption and the prosecutor’s ability to prove a case beyond a reasonable doubt. If the presumed fact flows from the basic proven fact beyond a reasonable doubt, there is no need for the Legislature to provide a missing link in the evidentiary chain. The presumption is then merely "an elemental inference based on common experience and all but universal probabilities” (People v Reisman, 29 NY2d 278, 285) and ordinary principles of circumstantial evidence apply. (People v Kirkpatrick, 32 NY2d 17, 23.) It is perhaps for this reason that the only "presumptions” which have satisfied the more rigid reasonable doubt test since Leary v United States (395 US 6, supra) have been those ancient common-law presumptions which might also be classified as inferences. (See Barnes v United States, 412 US 837, supra; Turner v United States, 396 US 398, supra.)
The courts may not empower the prosecution to take evidentiary short cuts, no matter how convenient, to establish the guilt of a person whom it presumes to be innocent. This much is the lesson we learn from Mullaney v Wilbur (421 US 684, supra) and Matter of Winship (397 US 358, supra) and from Tot v United States (319 US 463, supra) and Leary v United States (395 US 6) and the line of cases that have followed. The question left open in Leary, Turner and United States v Moore (571 F2d 76, supra) whether a presumption in a criminal case must satisfy the "reasonable doubt” standard, must be answered in the affirmative if Mullaney (supra) and (Winship (supra) mean anything at all.
Applying this analysis to the presumption at hand, can we say with assurance that merely because a person receives a benefit of electrical service, he has knowledge of interference with the meter or pipes? Can we be certain beyond a reasonable doubt? The answers to these questions are, most assuredly, "No”. Other possibilities exist and make impossible a conclusion that, beyond a reasonable doubt, defendants had knowl *296 edge of the tampering. The meters and pipes which measure and carry the energy used are most often outside the premises or, in these cases, in a basement of a multi-unit dwelling. Can we know, beyond a reasonable doubt, that the tampering was not done by a third party who has no relationship with the user and who is unknown to him? And how likely is it that a vandal would communicate to a tenant that he had done any tampering? We must answer that it is not likely in the least.
It is evident, then, that section 165.15 of the Penal Law asks us to make an inferential leap of some magnitude, and that it is a leap which we cannot make with certainty. It may be likely or probable that a defendant has knowledge of a diversion, but that likelihood or probability is not certainty beyond a reasonable doubt. Since the presumed fact does not flow from the established fact beyond a reasonable doubt, its use in a criminal case is constitutionally impermissible.
Finally, it is important to add that neither the fact that the presumption is rebuttable, nor that the jury may choose to ignore the presumption, is sufficient to save the statute. It is not enough to say that the jury does not necessarily have to find the presumed fact. That the presumption permits the jury to find an element of the offense when it has not been established independently beyond a reasonable doubt is alone sufficient to invalidate the statute. As Mr. Justice Hughes stated: "It is not sufficient to declare that the statute does not make it the duty of the jury to convict, where there is no other evidence but the breach of the contract and the failure to pay the debt. The point is that, in such a case, the statute authorizes the jury to convict. It is not enough to say that the jury may not accept that evidence as alone sufficient; for the jury may accept it, and they have the express warrant of the statute to accept it as a basis for their verdict. And it is in this light that the validity of the statute must be determined.” (Bailey v Alabama, 219 US 219, 235; see, also, Barnes v United States, 412 US 837, 841, n 3.)
It is thus apparent that it is impermissible for the courts to contribute to the erosion of constitutional guarantees by sanctioning the use of criminal presumptions which legally establish guilt, but which cannot logically be said to do so beyond a reasonable doubt.
I conclude, therefore, that subdivision 6 of section 165.15 of the Penal Law is constitutionally defective under the due *297 process clause. Accordingly defendants’ motions to dismiss are granted.