*50 OPINION OF THE COURT
Norman J. Felig, J.
The defendant, indicted for the crimes of grand larceny in the second degree (six counts), grand larceny in the third degree (three counts), petit larceny (one count), criminal tampering in the second degree (five counts), and theft of services (five counts) brings this omnibus motion to (1) inspect the Grand Jury minutes and dismiss the indictment due to insufficient evidence before the Grand Jury; (2) to dismiss specific counts in the indictment because they are duplications of and inconsistent with other counts and (3) to dismiss the theft of services counts on the ground that the presumption created by section 165.15 of the Penal Law is unconstitutional.
The counts charged in the indictment arise out of the theft of approximately 3,391,000 cubic feet of gas from the Brooklyn Union Gas Company during the period from May 21, 1975 to June 17, 1977. The theft of gas was accomplished through bypasses, pieces of pipe attached to the gas company’s lines, which allow one who is not a gas customer to obtain gas by tapping gas company lines and receiving free service.
The evidence adduced before the Grand Jury discloses that the defendant and his wife are the owners of the two multiple dwellings located at 195 Bedford Avenue and 1118 Madison Street, in Brooklyn. Gas service which provided heat and hot water for the buildings was supplied by the Brooklyn Union Gas Company. The monitoring of the gas service was done through meters located in the basements, which were kept locked. The meters were subsequently removed. The meter at 195 Bedford Avenue was removed in June of 1976 after service had been terminated the previous November and the meter at 1118 Madison Street had been removed in June of 1975 after service had been terminated the previous month. Thereafter, on four different occasions by-passes were found at 195 Bedford Avenue and twice at 1118 Madison Street. A Brooklyn Union Gas Company serviceman testified that the defendant was present, in the basement, at the time he found a by-pass at 1118 Madison Street. He said that the defendant "made a statement in reference of taking care of me if I didn’t turn him in.” He said he told the defendant that he could not do that. The Brooklyn Union Gas Company claims the value of gas service received in both buildings through the by-passes amounted to $9,997 for which it was not paid.
*51 I. SUFFICIENCY OF THE EVIDENCE
The defendant seeks a dismissal of the indictment on the ground that the evidence adduced before the Grand Jury was not legally sufficient to support each count in the indictment. The court has read the Grand Jury minutes and finds that the evidence adduced before the Grand Jury was legally sufficient and that there was reasonable cause to believe that the defendant committed the crimes charged in each count.
II. DUPLICATIONS AND INCONSISTENT COUNTS
The defendant erroneously alleges that several of the larceny counts should be dismissed because they are duplications of other counts. He claims that counts 7 and 4 charging grand larceny in the second degree overlap and counts 10 and 13 charging grand larceny in the third degree overlap in that they cover the same time periods, the same owner and a common scheme or plan and therefore constitute but two larcenies, not four as charged in the indictment.
The Court of Appeals, in People v Cox (286 NY 137, 142-143), held that "[w]here the property is stolen from the same owner and from the same place by a series of acts, if each taking is the result of a separate, independent impulse, each is a separate crime; but if the successive takings are all pursuant to a single, sustained, criminal impulse and in execution of a general fraudulent scheme, they together constitute a single larceny, regardless of the time which may elapse between such act.” However, the question of whether the series of acts constitutes one larceny or more than one is an issue of fact for the jury to determine (People v Daghita, 276 App Div 20).
The defendant also seeks the dismissal of either the larceny or theft of services counts in the indictment on the grounds that they are inconsistent and cannot stand together in that gas, which is the subject of both offenses is defined as two different things, to wit: property and a service. Those counts charging a larceny state that the defendant "pursuant to a common scheme and plan, did steal property, to wit: a quantity of gas”. The counts charging theft of services state that the defendant "did knowingly accept or receive the use or benefit of service, to wit: gas.” The defendant argues that gas cannot be both "property” and a "service”. This court does not agree and finds no inconsistency in defining gas as "property” in one offense and as a "service” in another.
*52 Subdivision 1 of section 155.05 of the Penal Law defines the offense of larceny and states that "[a] person steals property and commits a larceny when, with intent to deprive another of property or to appropriate the same to himself or to a third person, he wrongfully takes, obtains or withholds such property from an owner thereof.”
"Property” is defined in subdivision 1 of section 155.00 of the Penal Law as "any money, personal property, real property, thing in action, evidence of debt or contract, or any article, substance or thing of value.”
A person is guilty of theft of services as defined by subdivision 6 of section 165.15 of the Penal Law, when "[h]e knowingly accepts or receives the use and benefit of service, including gas, steam or electricity service, which should pass through a meter but has been diverted therefrom, or which has been prevented from being correctly registered by a meter provided therefor, or which has been diverted from the pipes, wires or conductors of the supplier therof.”
Subdivision 8 of section 155.00 of the Penal Law defines "service” as "the supplying of commodities of a public utility nature such as gas, electricity, steam and water.”
In People v Neiss (92 Misc 2d 839), the court noted that the crimes of larceny and theft of services are essentially different even though the same facts are alleged in both crimes. Larceny, on the one hand, is defined as the "wrongful taking” or stealing of property. Theft of services, on the other hand, is the interference with service, in this case the commodity of gas. The court found that gas, which is classified by statute as a service and a commodity (Penal Law, § 155.00, subd 8), can also be defined as property (People v Neiss, 92 Misc 2d 839, 841, supra) and therefore can be the subject of larceny.
The case of People v McLaughlin (93 Misc 2d 980) is applicable to the case at bar in its discussion of an indictment charging the crimes of larceny and theft of services, even though McLaughlin involved the tampering with an electric meter and the theft of electricity, not gas. The defendant in McLaughlin argued that the theft of services statute (Penal Law, § 165.15), a specific statutory provision, pre-empted the field, so that every case of meter tampering involves merely a theft of services, not a larceny under article 155 of the Penal Law, a general statutory provision. The court found that the defendant had misconstrued the legislative intent and held it is only where two statutory provisions are in conflict, and one *53 is general and the other specific, that the specific will control. The court stated (McLaughlin, supra, pp 985-986): "[t]here is no conflict at all here — both provisions are in utter harmony. It is perfectly true that both provisions impose, in some areas, different punishments for the same acts, but this is hardly a conflict, rather it is a coalescence, and yet another canon is thereby called into play, wherever possible, all parts of a statute are to be read together, construed together, and harmonized with each other.”
Statutory duplication is not uncommon and when the implications of a statute are quite clear, there should never be a search for the legislative intent. The legislative intent in this case is quite clear "that a taking of electricity shall constitute larceny and shall also constitute a theft of services [therefore] a person who steals electricty commits two separate crimes.” (McLaughlin, supra, p 986.) Applying that reasoning to the case at bar, the defendant’s alleged unlawful taking of gas constituted both a larceny and theft of services. Therefore, the larceny counts and the theft of services counts in the indictment are not inconsistent. The evidence adduced before the Grand Jury was sufficient to charge the defendant with both of these offenses. That branch of the motion which seeks a dismissal of either the larceny count or the theft of services count is denied.
III. CONSTITUTIONALITY OF SECTION 165.15 OF THE PENAL LAW
The defendant also seeks a dismissal of the theft of services counts on the ground that the presumptions created by the theft of services statute (Penal Law, § 165.15, subds 5, 6) are unconstitutional in that: 1. they fail to meet the constitutional guidelines necessary to uphold a presumption, and 2. they transfer the burden of proof from the People to the defendant.
Subdivisions 5 and 6 of section 165.15 of the Penal Law deal with the theft of a utility service. However, subdivision 5 involves meter tampering with which we are not concerned. The theft of services in this case was allegedly accomplished directly from the gas lines. The meters which measured the gas service had been removed in both buildings prior to the hook-up of the by-pass. Therefore, the only applicable presumption is the one created under subdivision 6 of section 165.15 which provides that: a person is guilty of theft of *54 services when "[h]e knowingly accepts or receives the use and benefit of service, including gas, steam or electricity service, which should pass through a meter but has been diverted therefrom, or which has been prevented from being correctly registered by a meter provided therefor, or which has been diverted from the pipes, wires or conductors of the supplier thereof. ” (Emphasis supplied.)
This section refers to the individual who has had his gas service cut off but who succeeds in regaining the service by unauthorized tampering. (See Hechtman, Practice Commentaries, McKinney’s Cons Laws of NY, Book 39, Penal Law, § 165.15, p 226.)
Subdivision 6 of section 165.15 further provides that: "In any prosecution under this subdivision proof that service has been intentionally diverted from passing through a meter or has been intentionally prevented from being correctly registered by a meter provided therefor, or has been intentionally diverted from the pipes, wires or conductors of the supplier therof, shall be presumptive evidence that the person who accepts or receives the use and benefit of such service has done so with knowledge of the conditions so existing.”
The second half of subdivision 6 of section 165.15 contains a statutory presumption, which states that when there is evidence of tampering with utility lines, the presumption is that the one who receives the use and benefit of the service has done so with knowledge of the tampering. The defendant, as owner of the two buildings in which the tampering was discovered, was indicted under this section. He does not deny that these by-passes were actually found, but he does deny personal knowledge of their existence. He contends that this presumption fails to meet the constitutional guidelines necessary to uphold a presumption and is a violation of due process and hence unconstitutional. At issue is the validity of this statute creating the presumption.
The courts have set down strict guidelines to follow in a case where the constitutionality of a statute has been challenged. The Supreme Court has directed the lower courts to give great respect to the judgment of the Legislature (Leary v United States, 395 US 6; United States v Gainey, 380 US 63). Consequently "[I]egislative acts have [been afforded] a strong presumption of constitutionality” (People v Alston, 94 Misc 2d 89, 94; see People v Pagnotta, 25 NY2d 333). This presumption of constitutionality of a statute is so strong that the courts *55 "demand of those who attack them a demonstration of invalidity beyond a reasonable doubt, and the courts strike them down only as a last unavoidable result” (Matter of Van Berkel v Power, 16 NY2d 37, 40; see People v Pagnotta, supra; People v Scatena, 63 AD2d 687). "[I]t is the obligation of a court to construe a statute to preserve its constitutionality wherever possible” (People v Alston, 94 Misc 2d 89, 94, supra).
In addition, there is the principle quoted by the court in New York, Lackawanna & Western Ry. Co. v Roll (32 Mise 321). The court (supra, pp 324-325), quoting from a very old case, stated: " 'But when terms or modes of expression are employed in a new statute, which had acquired a definite meaning and application in a previous statute on the same subject, or one analogous to it, they are generally supposed to be used in the same sense; and in settling the construction of such new statute, regard should be had to the known and established interpretation of the old.’ [Whitcomb v Rood, 20 Vt 49].”
It would therefore not be amiss to trace the history of subdivision 6 of section 165.15. In 1854 the first law involving theft of services was passed. It was called "an act for the protection of gas-light companies” and made it a misdemeanor to tamper with gas lines (L 1854, ch 109). In 1926 a new subdivision was added to the theft of services statute. Section 1431-a of the former Penal Law (L 1926, ch 849) created a presumption which stated that: "The existence of any of the conditions with reference to meter, or attachments described in section fourteen hundred and thirty-one of this article is presumptive evidence that the person to whom gas, electricity, water or steam is at the time being furnished by or through such meters or attachments has, with intent to defraud created or caused to be created with reference to such meters or attachments, the condition so existing.” (Emphasis supplied.)
In 1932, the Appellate Division upheld the validity of this presumption in the case of Eif-Ess, Inc. v New York Edison Co. (237 App Div 315). This case involved the tampering with an electric meter. The plaintiff sued the defendant electric company for cutting off his electric service. The defendant contended that they were justified because the plaintiff had been stealing electric current by tampering with the electric meter. The court (supra, pp 317-318) held that the defendant was entitled to the use of the presumption and stated that: "The inference which the statute (Penal Law, § 1431-a) per *56 mits is that the subscriber is chargeable with guiltily having procured this condition. It seems to us that this is an inevitable inference resulting from the fact that the subscriber is the only party who could possibly benefit from tampering with the meter. The subscriber is in effect the receiver of the stolen current. At common law an inference of guilt attached to the possession of stolen goods without explanation (Goldstein v. People, 82 N. Y. 231; 5 Wigm. Ev. [2d ed] § 2513, and cases there cited.) In Goldstein v. People (supra) the court in its opinion (at p. 235) said: 'The crime of larceny had been committed. The thieves had parted with its fruits, and if found in the prisoners’ possession there was no unfairness in calling upon them for an explanation, and in its absence attributing their silence to guilt, in receiving the property with knowledge of the theft. * * *.’ There is no difference in principle in charging a man with guilty possession in whose custody one’s property is found a short time after a robbery from similarly charging a subscriber who has consumed current which concededly has been stolen and not paid for. A similar inference was held proper in People v. Adams (176 N. Y. 351). We see no reason for holding this statute unconstitutional.”
When the Penal Law was revised by chapter 1030 of the Laws of 1965, the statute governing theft of utility services was rewritten and the presumption under section 1431-a was omitted (see Gilbert, Criminal Code and Penal Law, 1967, Penal Law, § 165.15). However, a presumption was added to section 165.15 under subdivisions 5 and 6 by chapter 768 of the Laws of 1976.
The present subdivision 6 of section 165.15 is so similar to former section 1431-a that the courts have employed similar reasoning in their determination of the constitutionality of the theft of services presumption. This presumption was reinstated when the Legislature recognized the difficulty of obtaining proof of actual tampering. "Such proof can be produced only in the rare instance where one is caught red-handed altering the electrical circuit to bypass a meter. It would be a travesty to hold that only in such a case could the Legislature prohibit substantial continuous profit by way of theft” (People v Mendez, 94 Misc 2d 447, 449). If tampering was to be effectively detered then the presumption was both necessary and essential. "The crime of tampering with utility meters is rarely committed with witnesses present, but this section establishes the responsible party” (Fink, Utility services, theft, *57 NY Legis Ann, 1976, pp 36-37). The presumption permits the inference to be drawn that the party who accepts the use and benefit of the service does so with knowledge that either the meters or lines providing the service were tampered with.
1. CONSTITUTIONAL GUIDELINES OF A PRESUMPTION
Presumptions, such as the one in this case, are not uncommon to the criminal law* and have been upheld by the Supreme Court and our Court of Appeals. Although the Federal and State courts have set standards with which a presumption must comply, the basic premise is that a presumption violates due process if there is no rational relationship between the facts in evidence and the fact inferred. In Tot v United States (319 US 463) the Supreme Court held that there must be a rational connection between the facts proved and the facts presumed. Any arbitrary inference between the two would be a violation of due process. Later, the court stated that a rational connection between facts proved directly and those inferred from them require a "substantial assurance that the presumed fact is more likely than not to flow from the proved fact on which it is made to depend” (Leary v United States, 395 US 6, 36, supra). The rational connection principle has been enunciated in several of the Supreme Court’s decisions (Barnes v United States, 412 US 837; Turner v United States, 396 US 398; United States v Romano, 382 US 136; and United States v Gainey, 380 US 63, supra).
The Court of Appeals in People v Leyva (38 NY2d 160) stated that New York has an even higher standard of rational connection than the Federal courts. In People v Terra (303 NY 332, 335, app dsmd 342 US 938) the court held the standard to be "whether, based on life and life’s experiences, a rational connection between the fact proved and the ultimate fact presumed may be said to exist.” The court in People v Hildebrandt (308 NY 397, 400) held that the facts presumed must "have a natural, not an unreasonable or unnatural, connection with facts proven.” Two later cases held that the connection must assure "a reasonably high degree of probability” that the presumed fact follows from the given evidence *58 (People v Kirkpatrick, 32 NY2d 17, 30, app dsmd 414 US 948; and People v McCaleb, 25 NY2d 394, 404).
The defendant alleges that the possibilities which arise from the established facts are numerous; therefore, no rational connection can exist. He claims a person having a grudge against him could tamper with the gas lines and then inform the utility of the by-pass. He also claims that any of the tenants in the apartment houses are possible suspects. In addition, he contends that there was no evidence placing him at the scene of the crime or that he caused anyone else to commit the crime. He states that he was never caught "red-handed” and there is only the evidence of a by-pass, not of the actual tampering. The statement attributed to the defendant by the Brooklyn Union serviceman, referred to above, would appear to negate any of these inferences.
Several New York courts, in recent decisions, have upheld the theft of services presumption as constitutional (People v Mendez, 94 Misc 2d 447, supra; People v McLaughlin, 93 Misc 2d 980, supra; and People v Casteneda, 92 Misc 2d 687). Only one court struck down the presumption (People v Thomas, 95 Misc 2d 289).
In People v Casteneda (supra), the defendant was charged with the offense of theft of services under subdivision 6 of section 165.15 of the Penal Law in that the electric meter servicing his premises had been tampered with to register a lesser amount of electrical current than was actually consumed. Although there was no direct proof of the tampering, the court (Bronx County Criminal Court) held (supra, p 693) that "it would seem to be illogical and contrary to experience to conclude that the meter tampering was done without the knowledge of the one benefited thereby. Applying any of the tests set forth by the courts, it seems clear that the presumption here under review passes muster — and with room to spare.”
People v McLaughlin (supra) consolidated several cases of theft of services charging that the various defendants tampered with the electric meters so that electricity passed through these meters without proper measurement. The court (Queens County Supreme Court) upheld the presumption, relying on the reasoning set out in Eff-Ess, Inc. v New York Edison Co. (237 App Div 315, 317, supra), which held "that the meter-tampering presumption 'is an inevitable inference resulting from the fact that the subscriber is the only party who *59 could possibly benefit from tampering with the meter’ ” (McLaughlin, supra, p 988).
In People v Mendez (94 Misc 2d 447, supra), the defendant was also charged with the offense of theft of services under subdivision 6 of section 165.15 in that he knowingly accepted and received electrical service which should have passed through a meter but which was diverted therefrom. The court (Bronx County Criminal Court) relied on the decision in People v Casteneda (supra), which upheld the constitutionality of the presumption.
The defendant states that these courts have not sufficiently analyzed the presumption guidelines in that the New York courts have placed great emphasis on the physical proximity and control over the subject in determining the constitutionality of other presumptions (People v McCaleb, 25 NY2d 394 supra; People v Harris, 47 AD2d 385; People v Caban, 90 Misc 2d 43). He argues that the presumption, at bar, has not been analyzed in this regard. McCaleb, Harris and Caban upheld the use of presumptions involving possession of narcotics and unauthorized use of an automobile only when there was physical proximity between the accused and the subject in question. However, these cases are not applicable. The presumptions involved would not satisfy the rational connection test if there was no physical proximity. In the present case, physical proximity aside, there is a rational connection in that the defendant did benefit from the tampering.
The fact that the defendant was never actually caught installing a by-pass (in the physical proximity of) is irrelevant. That is the reason for the presumption in a case such as this. This statute was enacted to facilitate the prosecution in utility tampering cases where actual evidence of the act of tampering is almost impossible. If the presumption is upheld as constitutional then the statute permits the inference to be drawn that the owner of the building receiving the service had knowledge of the tampering. Actual, direct evidence is not needed.
What is relevant in this case is that the defendant did have knowledge of the tampering. The Grand Jury minutes disclose an alleged attempt by the defendant to "bribe” a serviceman of the Brooklyn Union Gas Company if he did not report the by-pass. This belies his claim of lack of knowledge and makes the rational connection between the presumed fact and the proven fact even easier to demonstrate.
The case of People v Thomas (95 Misc 2d 289, supra) *60 which struck down the theft of services presumption used a novel standard in determining its unconstitutionality. The court held that the presumption must not only satisfy the rational connection standard, it must also satisfy the reasonable doubt standard, a standard which has never been used by the New York courts. Few courts have discussed this issue. In Leary v United States (395 US 6, supra), the Supreme Court held that the rational connection standard may be only a minimum test of constitutionality. They held a more stringent test would be whether the presumed fact flows logically from the basic fact, beyond a reasonable doubt. The Leary court never actually discussed the reasonable doubt test since the presumption did not satisfy the rational connection test. The reasonable doubt test was discussed in later Supreme Court cases (Turner v United States, 396 US 398, supra; Barnes v United States, 412 US 837, supra). However, no conclusion was ever reached nor was the test ever applied. The New York courts have never dealt with this issue until Thomas.
Thomas holds that the theft of services presumption satisfies the rational connection test in that even though there are other possibilities which arise out of the presumption, the most likely possibility is that the recipient of the unmetered service is the tamperer. However, the court found that the presumption did not satisfy the reasonable doubt standard in that other possibilities do exist and without such satisfaction there is a violation of due process. The contention of the Thomas court is that if the presumed fact flows from the proven fact beyond a reasonable doubt, there is no shift in the burden of proof. However, if the presumption merely satisfies the rational connection standard, the burden of proof would be shifted to the defendant and the presumption would be unconstitutional in that there is a violation of due process. "[NJeither the fact that the presumption is rebuttable, nor that the jury may choose to ignore the presumption, is sufficient to save the statute” (People v Thomas, 95 Misc 2d 289, 296, supra).
This court does not agree with the learned court in Thomas and finds that the reasonable doubt standard is not the standard to be applied, and that there is no shift in the burden of proof. Moreover, the presumption in the case at bar does satisfy this test in that the defendant allegedly had knowledge of the tampering. This was evidence adduced before the Grand Jury. In addition, this court finds that the *61 presumption created by subdivision 6 of section 165.15 of the Penal Law is constitutional in that it satisfies the standards of due process, State and Federal, which require a rational connection. Given the fact of a by-pass, it is not unreasonable to presume that the defendant, as owner of the building, knew of its existence.
2. BURDEN OF PROOF
It is a basic premise in the criminal law that due process requires proof beyond a reasonable doubt. The ultimate burden of proof beyond a reasonable doubt with respect to all of the elements of the crime charged always remains with the prosecution.
 The defendant, relying on the Thomas (95 Misc 2d 289, supra) case argues that the presumption created by subdivision 6 of section 165.15 of the Penal Law is unconstitutional because it shifts the burden of proof from the People to the defendant. He claims that when the evidence of a by-pass is discovered the burden shifts to the defendant to come forward and explain his whereabouts. This is a misconception. A presumption merely provides a method whereby certain facts are deemed to be prima facie proof of other facts. The question of whether the defendant had knowledge of the tampering "despite the presumption — must still be proven by the prosecution beyond a reasonable doubt” (People v Casteneda, 92 Misc 2d 687, 691, supra; People v Leyva, 38 NY2d 160, supra; People v McLaughlin, 93 Misc 2d 980, supra). (Emphasis supplied.)
Presumptions range from those known as conclusive presumptions to those known as permissive presumptions. Conclusive presumptions are those which describe basic value judgments, such as a defendant is presumed innocent until proven guilty or the presumption against suicide. A conclusive presumption is equivalent to a substantive rule of law which favors the party introducing it and acts to transfer the burden of proof, as does an affirmative defense, to the party raising it. Such a presumption cannot be rebutted. A permissive presumption is a rebuttable presumption. It places the burden upon the adversary to come forward with evidence to rebut the presumption, to negative the existence of the fact (see Richardson, Evidence [10th ed], pp 34-38).
A permissive presumption is "an inference which the law directs the jury to draw if it finds a given set of facts; an *62 inference is a conclusion which the jury is permitted, but not compelled to draw from the facts.” (Bray v United States, 306 F2d 743, 747.) The presumption created by subdivision 6 of section 165.15 of the Penal Law is a permissive presumption (Schlichting, Constitutionality of Statute Covering Meter-Tampering, NYU, Aug. 24, 1978, p 1, col 2). Presumptions of this type authorize but do not require the jury to find the presumed fact (i.e., that the one who receives the gas service has done so with knowledge of the tampering) from the fact in evidence (i.e., evidence of the actual tampering).
Justice Cardozo in People v Galbo (218 NY 283) stated that the inferences drawn from a presumption are not ones of law but of fact. They are inferences which may be neutralized, repelled, or rendered so attenuated by other facts that they would be rejected. Even if "incriminating inferences remain possible * * * unless other circumstances are shown, there is no principle of selection, aside from the presumption of innocence, to guide the choice between them.” (Galbo, supra, p 292.)
"The existence of evidence from which the jury may draw an inference of guilt does not destroy the presumption against guilt unless in the jury’s view the inculpatory evidence, together with all the other evidence or lack of evidence in the case, overcomes the presumption * * * The [presumption of knowledge in the case at bar] does not create a legal presumption of the guilt of the accused; it merely raises a question of fact for the jury (People v. Roman, 12 N Y 2d 220, 222) * * * The jury may or may not accept the evidence, and may or may not draw the inference (Stover v. People, 56 N. Y. 315, 318). 'If the circumstances make one inference just as reasonable as the other, we must give the defendant the benefit of the conclusion that would mitigate his guilt’ (People v. Galbo, 218 N. Y. 283, 292)” (People v Papanier, 20 AD2d 672, 674, dissenting opn).
This inferential tool, created by the permissive presumption, is a necessary element which enables the prosecution to prove its case. Without this tool, proof of participation in the alleged crime would be almost impossible (see United States v Gainey, 380 US 63, supra). However, it is not conclusive and the trier of fact has the right to find that the presumption fails and to reject it. The defendant may attack the presumption by calling witnesses, testifying himself or through cross-examination of the prosecution’s witnesses.
*63 A permissive presumption or inference of fact has no effect on the ultimate burden of proof. The fundamental principle known as the "burden of proof’ actually involves two separate concepts. These are the burden of persuasion and the burden of going forward with the evidence and the two must be distinguished. The burden of persuasion remains on the same party throughout the trial, it never shifts, the burden of going forward with the evidence does shift from one party to the other. A presumption, such as in this case, which operates to aid the prosecution does not affect the ultimate burden of proof. It operates in such a way that it places a burden on the defendant, if he so chooses, to come forward with evidence to the contrary. In other words, the burden of going forward with evidence to rebut the presumption is upon the defendant. In the case at bar, as a result of the presumption, the burden shifts to the defendant of going forward to explain away, destroy or rebut the inference to be drawn.
This burden of going forward is in no way related to the burden of persuasion. The burden of persuasion refers to the balancing of the evidence. It is the burden which is placed on the prosecution to persuade the trier of fact that the defendant is guilty. The burden of persuasion in a criminal case is to prove guilt beyond a reasonable doubt (see Richardson, Evidence [10th ed], pp 71-72; Schlichting, Constitutionality of Statute Covering Meter-Tampering, NYLJ, Aug. 24, 1978, p 1, col 2, supra). This burden never shifts to the defense. The introduction of a presumption does not aifect or change the burden of persuasion. "No matter how persuasive the evidence of guilt may seem to the court, a defendant does not carry the burden of disputing it, nor does his failure to offer evidence on an element of the crime change or satisfy the prosecutor’s burden. United States v. Hall, 525 F.2d 1254, 1256 (5th Cir. 1946); De Ceceo v. United States, 338 F.2d 797, 798 (1st Cir. 1964).” (Lopez v Curry, 583 F2d 1188, 1192-1193.)
Thus, it is evident that the burden of proof and the burden of going forward are two separate and distinct concepts — one remaining constant, the other changing and shifting as the circumstances may warrant. "Despite the clear distinction in principle and effect between the burden of proof and the burden of going forward with the evidence, the courts sometimes confuse the terms, using one in place of the other.” (Richardson, Evidence [10th ed], p 72.) This is exactly what the court did in the Thomas (95 Misc 2d 289, supra) case. It *64 confused the burden of going forward with the evidence with the ultimate burden of proof.
If the presumption in this case did operate in such a way as to shift the burden of proof to the defendant, it would be unconstitutional. However, as the court held in People v Leyva (38 NY2d 160, 165, supra) "it is the presence of a rational connection which prevents the burden of proof from shifting impermissibly to the defendant.” (See Tot v United States, 319 US 463, supra.)
 The purpose of the theft of services presumption is to infer that the one who accepted the service had knowledge of the tampering. This presumption merely forms part of the prosecution’s prima facie case. It does not play any larger role in the prosecution’s case than any other facts offered. Either through evidence offered by the defendant, who has the burden of going forward, or by attacking the credibility of the prosecution’s witnesses, an alternate set of facts or inferences to be drawn from facts is presented to the jury, which has the ultimate burden of choosing between the two sets (People v Leyva, 38 NY2d 160, supra; Schlichting, Constitutionality of Statute Covering Meter-Tampering, NYLJ, Aug. 24, 1978, p 1, col 2, supra). "It might be possible, of course, that a defendant’s evidence will prove the truth of his choice of inferences so conclusively that reasonable persons could no longer believe the inference authorized by statute.” (Leyva, 38 NY2d 160, 169, supra.)
The presumption authorized by subdivision 6 of section 165.15 of the Penal Law does not conclusively establish that the one who is receiving the service has knowledge of the tampering per se. It merely permits an inference to be drawn against the owner. It does not place any oppressive burden on him (People v Terra, 303 NY 332, app dsmd 342 US 938, supra). He is merely called upon to come forward and explain the situation. Even if he cannot satisfactorily explain his role or nonrole or falsely explains it, it is still for the jury to decide if the prosecution has satisfied its burden of persuasion in proving guilt beyond a reasonable doubt. The jury is not to be told that it must find the defendant guilty if the prosecution establishes the fact of the tampering beyond a reasonable doubt; it is only to be told that it may infer the defendant received the gas, with knowledge of the tampering and, therefore, may find him guilty of theft of services.
*65 This court finds that the presumption created by subdivision 6 of section 165.15 of the Penal Law is not unconstitutional.

 The following are criminal law presumptions: section 165.55 of the Penal Law, criminal possession of stolen property; section 190.10 of the Penal Law, the issuance of a bad check; section 220.25 of the Penal Law, criminal possession of a controlled substance; section 225.35 of the Penal Law, gambling offenses; section 235.10 of the Penal Law, obscenity cases; and section 265.15 of the Penal Law, weapons cases.